421 A.2d 261

**In re Commitment of Donna HUTCHINSON.**

**Appeal of Donna HUTCHINSON.**

Superior Court of Pennsylvania.

Argued March 17, 1980.

Filed July 11, 1980.

Intervention and Reargument En Banc Denied Nov. 7, 1980.

402

Robert J. Manara, Reading, for appellant.

Alvin Maurer, City Solicitor, Schuylkill County, participating party.

Before PRICE, CAVANAUGH and WATKINS, JJ.

CAVANAUGH, Judge:

Following a hearing in the Court of Common Pleas of Schuylkill County on May 12, 1979, Donna Hutchinson, appellant, was committed to Wernersville State Hospital for a period of ninety days pursuant to the "Mental Health Procedures Act," [MHPA], Act of July 9, 1976, P.L. 817, No. 143, § 304, as amended, 50 P.S. § 7304. Appellant represented by counsel other than hearing counsel, filed a motion for reconsideration of the commitment order in which she alleged, inter alia, that hearing counsel was ineffective for failing to object to hearsay testimony. This motion was denied on June 21, 1979, and appellant filed a timely appeal raising only the issue of ineffectiveness.

On May 19, 1979, appellant was admitted to the Pottsville Hospital for involuntary emergency examination for a period not to exceed seventy–two hours on the petition of appellant's grandmother, Mrs. Victoria Lech. 50 P.S. § 7302. Mrs. Lech, with whom appellant resided, alleged that appellant had been physically abusive toward her and had struck her with an object. On May 21, 1979, the examining physician at the hospital petitioned the court to commit appellant for involuntary treatment for a period of not more than ninety days. 50 P.S. § 7304. A hearing was held the following day.

For a court to order involuntary treatment under 50 P.S. § 7304, it must be determined that a person is severely mentally disabled and in need of treatment. An individual is considered severely mentally disabled when he or she poses a clear and present danger of harm to others or to himself or herself. 50 P.S. § 7301(a). Instantly, appellant was detained on the grounds that she posed a clear and present danger to others. To establish dangerousness to others, it must be shown that within the past thirty days the person has inflicted or attempted to inflict serious bodily harm on another and that there is reason to believe that such conduct will be repeated. 50 P.S. § 7301(b)(1).

At the hearing, Dr. Albert Kazlauskas, a psychiatrist, testified that the May 19, 1979, commitment forms indicated that within the last thirty days appellant had struck her grandmother and also had possessed a gun with which she had threatened to kill someone. Although the Schuylkill Haven police had taken the gun from her, appellant had continued her threats to kill someone. Dr. Kazlauskas also testified as to appellant's prior history of psychiatric treatment and his personal examination of her during the emergency commitment. He concluded that appellant was suffering from a severe mental disability and without treatment she was a serious threat to the people of the community. Appellant took the stand and denied threatening or striking her grandmother and possessing a gun during that period of time. She testified that her relatives were hostile

toward her and admitted that she was not taking the medication prescribed by the doctor. At the close of the hearing, the trial court ordered appellant to receive in–patient treatment at Wernersville State Hospital for a period not to exceed ninety days.

We first must determine whether appellant may raise the issue of ineffective assistance of counsel in an appeal from a civil commitment proceeding under 50 P.S. § 7304. The lower court found that because the instant involuntary commitment hearing is a civil proceeding, appellant does not have a constitutional right to the effective assistance of counsel. Therefore, since appellant's hearing counsel failed to object to hearsay evidence admitted at the hearing, the lower court, relying upon *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), held that the issue had been waived.

■ Involuntary civil commitment of mentally ill persons constitutes a substantial deprivation of liberty which may only be accomplished in accordance with due process protection.[1] *Appeal of Niccoli*, 472 Pa. 389, 395 n.4, 372 A.2d 749, 752 n.4 (1977); *Commonwealth v. McQuaid*, 464 Pa. 499, 517, 347 A.2d 465, 475 (1975); *Commonwealth ex rel. Finken v. Roop*, 234 Pa.Super. 155, 163, 339 A.2d 764, 768 (1975) *appeal dismissed* 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976). *See also: Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). This rationale was recognized by the General Assembly in enacting the present MHPA:

It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected. The provisions of this act shall be interpreted in

1. While this notion appears to be accepted uniformly, the Pennsylvania judiciary have expressed different views as to the scope and basis of these protections. *See Commonwealth ex rel. McGurrin v. Shovlin*, 435 Pa. 474, 257 A.2d 902 (1969); *Commonwealth ex rel. Platt v. Platt*, 266 Pa.Super. 276, 404 A.2d 410 (1979); *Commonwealth ex rel. Finken v. Roop*, 234 Pa.Super. 155, 163, 339 A.2d 764, 768 (1975) *appeal dismissed* 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976).

conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others.

50 P.S. § 7102.

The Pennsylvania Supreme Court, in *In re Gross*, 476 Pa. 203, 382 A.2d 116 (1978), stated that the MHPA evinces "an enlightened legislative endeavor to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights." *Id.*, 476 Pa. at 212, 382 A.2d at 121.

Among the due process protections that the legislature considered necessary in civil commitment hearings are:

(e) Hearings on Petition for Court–ordered Involuntary Treatment.–A hearing on a petition for court–ordered involuntary treatment shall be conducted according to the following:

(1) The person shall have the right to counsel and to the assistance of an expert in mental health.

(2) The person shall not be called as a witness without his consent.

(3) The person shall have the right to confront and cross–examine all witnesses and to present evidence in his own behalf.

(4) The hearing shall be public unless it is requested to be private by the person or his counsel.

(5) A stenographic or other sufficient record shall be made, which shall be impounded by the court and may be obtained or examined only upon the request of the person or his counsel or by order of the court on good cause shown.

(6) The hearing shall be conducted by a judge or by a mental health review officer and may be held at a location other than a courthouse when doing so appears to be in the best interest of the person.

(7) A decision shall be rendered within 48 hours after the close of evidence.

Instantly, the lower court held that a claim of ineffective assistance of counsel is cognizable only in a criminal action and that, because an involuntary commitment hearing under MHPA is a civil proceeding, appellant enjoys no constitutional right to *effective* counsel. Although in the past Pennsylvania courts have relied on the civil/criminal distinction in determining the due process to be afforded an alleged mental incompetent, e.g. *Commonwealth v. Bechtel*, 384 Pa. 184, 120 A.2d 295 (1956); *Commonwealth v. Anderson*, 211 Pa.Super. 349, 236 A.2d 558 (1967), such a wooden approach can no longer be determinative in light of the policy expressed in § 7102 and the strict due process safeguards provided in § 7304. Judge Hoffman's comments in *Commonwealth ex rel. Finken v. Roop, supra*, while not controlling, are instructive:

Euphemistic terminology is not determinative of the application of the Due Process Clause: "We cannot, nor should we ignore the serious consequences of such proceedings simply by designating them as 'collateral' rather than 'criminal' . . . Whether denominated collateral or criminal, such proceedings are surely subject to the due process clause of the Constitution." . . .

We must consider the reality of the lower court's commitment order. The serious deprivation of liberty and the unfortunate stigma which follow involuntary commitment render the distinction between "criminal" and "civil" proceedings meaningless. [Citations and footnotes omitted.]

*Id.* 234 Pa.Super. at 171–72, 339 A.2d at 772–73. *Accord: McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *Heryford v. Parker*, 396 F.2d 393 (10th Cir. 1968); *Quesnell v. State*, 83 Wash.2d 224, 517 P.2d 568 (1974).

■ Of course, all rights given to a person accused of a crime do not automatically apply to a person in a civil commitment hearing. *See: Addington v. Texas, supra; McKeiver v. Pennsylvania, supra*. Due process is a flexible concept which calls for such procedural safeguards as the particular situation demands in light of the interests at

stake. *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *In re Ballay*, 482 F.2d 648 (D.C.Cir. 1973); *Johnson v. Solomon*, 484 F.Supp. 278 (D.Md.1979); *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975).

In determining whether an individual's right to counsel under the MHPA constitutes the right to the assistance of *effective* counsel enjoyed by an accused in a criminal proceeding, we must consider the competing interests of the Commonwealth and the individual.

■ The interests of the Commonwealth in civil commitment of mentally disturbed persons is twofold. One interest is to ensure the availability of adequate treatment to those persons who are mentally ill but who decline treatment. 50 P.S. § 7102. The Commonwealth's right to constrain the freedom of a mentally ill person for his or her benefit is based on the doctrine of *parens patriae.* The rationale of this doctrine is that the state has a humanitarian duty to safeguard the welfare of the individual. The other interest of the Commonwealth in civil commitment is the protection of the welfare of others from the mentally ill person. The authority to confine dangerous persons arises from the state's inherent police powers. *See Developments–Civil Commitment of the Mentally Ill*, 87 Harv.L.Rev. 1190 (1974). *See also Commonwealth ex rel. Platt v. Platt, supra,* (Spaeth, J. dissenting).

The interest of the individual in his or her right to the assistance of counsel at an involuntary commitment hearing is unquestionably significant. *See: Heryford v. Parker, supra; Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D.Wis.1972); *Johnson v. Solomon, supra; Commonwealth ex rel. Finken v. Roop, supra.* The legislature has recognized the importance of this right and specifically has mandated that a person be represented by counsel either privately retained or provided by the court. 50 P.S. § 7304(c)(3) and (e)(1). In order for this right to be meaningful, the appointed counsel must be

competent and adversarial.[2] In a criminal setting, our Supreme Court has stated: "The right to representation by counsel to be meaningful necessarily includes the right to effective representation." *Commonwealth v. Wideman*, 453 Pa. 119, 123, 306 A.2d 894, 896 (1973). *Cf. Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). If the representation of an alleged mental incompetent is not required to be "effective" in the same constitutional sense as the representation of the criminally accused, the right to counsel provided by 50 P.S. § 7304 would become a hollow gesture serving only superficially to satisfy due process requirements. Indeed, the absence of the guiding hand of competent counsel would vitiate not only the appellant's right to counsel but would also emasculate the other protections guaranteed by 50 P.S. § 7304 including the right to cross–examine and confront witnesses.[3]

██ Holding as we do that the MHPA contemplates the assistance of *effective* counsel, it follows that appellant may raise the issue of ineffectiveness on appeal.[4] To relegate appellant to the civil remedy of a negligence suit for money damages is no remedy at all for the loss of liberty and the

**2.** Appellee contends that a civil commitment hearing is a nonadversarial proceeding, the paramount purpose of which is to aid the mentally ill person. This view is untenable. Where a person petitions the court to commit an individual who resists commitment and denies his or her need for treatment, the parties ineluctably are poised as adversaries despite the altruistic intentions of the petitioner. *See: Commonwealth ex rel. Platt v. Platt*, (Spaeth, J., dissenting), *supra*. The due process rights guaranteed by 50 P.S. § 7304 can only be protected by counsel acting as an advocate.

**3.** Other jurisdictions have insisted that counsel at a civil commitment hearing must be effective and adversarial. *E.g., Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974); *Suzuki v. Quisenberry*, 411 F.Supp. 1113 (D.Haw.1976); *Lessard v. Schmidt, supra; State ex rel. Hawkes v. Lazaro*, 157 W.Va. 417, 202 S.E.2d 109 (1974); *State ex rel. Memmel v. Mundy*, 75 Wis.2d 276, 249 N.W.2d 573 (1977).

**4.** Some courts have entertained claims of ineffective representation of counsel on appeals from civil commitment orders. *See In re Basso*, 299 F.2d 933 (D.C.Cir. 1962); *Quesnell v. State, supra; State ex rel. Hawkes v. Lazaro, supra; State ex rel. Memmel v. Mundy, supra. See also Prochaska v. Brinegar*, 251 Iowa, 834, 102 N.W.2d 870 (1960).

stigma attached to an adjudication of severe mental disability. Compare *Dilliplaine v. Lehigh Valley Trust Co., supra,* (Manderino, J., concurring). Where a person has been denied his right to counsel under 50 P.S. § 7304, the appropriate relief is a new hearing at which that individual may be represented by competent counsel.

Appellee has not indicated in what manner the Commonwealth's interest will be impaired by permitting appellant to raise the issue of ineffectiveness. Nor can we perceive of any. Other procedural rights, normally granted to criminal defendants, have not been extended to civil commitment hearing because they would too greatly impair the state's interest in treating mentally ill persons who are a threat to themselves or others. For example, the United States Supreme Court, holding that the standard of proof in civil commitment cases need only be "clear and convincing," concluded that: "the reasonable doubt standard is inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment." *Addington v. Texas, supra,* 441 U.S. at 432, 99 S.Ct. at 1812–1813, 60 L.Ed.2d at 335.[5] Our holding today poses no such obstacle to the Commonwealth in providing mental health care to those in need of hospitalization. In fact, the interests of the Commonwealth in maintaining the integrity and accuracy of its judicial determinations will be enhanced by the active participation of effective counsel who can aid the court in its truth–finding function by bringing to the court's attention evidence militating against commitment and by exposing inconsistencies in the petitioner's evidence.

5. The criminal standard of proof has been adopted in a number of jurisdictions. *See, e.g.: In re Ballay, supra; Lessard v. Schmidt, supra; Superintendent of Worcester State Hospital v. Hagberg,* 374 Mass. 271, 372 N.E.2d 242 (1978); *Proctor v. Butler,* 117 N.H. 927, 380 A.2d 673 (1977); *In re Hodges,* D.C.App., 325 A.2d 605 (1974); *Lausche v. Commissioner of Public Welfare,* 302 Minn. 65, 225 N.W.2d 366 (1974).

We hold therefore that the requirement of the assistance of counsel in MHPA implicitly requires the assistance of "effective" counsel and that a respondent in a civil commitment hearing under 50 P.S. § 7304 may bring an appeal alleging the ineffective assistance of counsel.

Turning to the merits of appellant's appeal, we find that the claim of ineffectiveness is properly before this court on direct appeal because appellate counsel is different from hearing counsel. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

The test of counsel's effectiveness was articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967):

> Our task in cases of this nature therefore encompasses both an independent review of the record, *see Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A.2d 236 (1967), and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. . . . We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some *reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

[Footnotes omitted.] [Emphasis in the original.] *Id.*, 427 Pa. at 604–05, 235 A.2d at 352–53. Where the issue of ineffectiveness is raised on direct appeal and the record shows that there could have been no reasonable basis for a damaging omission by trial counsel, the appellate court may grant the appropriate relief without remanding for an evidentiary hearing. *Commonwealth v. Mims*, 481 Pa. 275, 392 A.2d 1290 (1978); *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1976).

■ Appellant argues that hearing counsel rendered ineffective assistance of counsel in failing to object to hearsay evidence offered by the only Commonwealth witness, Dr. Kazlauskas. He testified that the commitment forms and a telephone conversation with appellant's grandmother revealed that appellant had assaulted her grandmother and possessed a gun which was taken from appellant by the police. This testimony is clearly hearsay because it represents out of court statements made by appellant's grandmother which were offered to prove that appellant did indeed commit the alleged assault. Neither the police nor Mrs. Lech were called as witnesses. Without doubt, this evidence was crucial in establishing whether appellant presented a clear and present danger to others under 50 P.S. § 7301(b)(1). Under these circumstances, hearing counsel could have no reasonable basis for failing to object to this evidence. *See: Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978). Accordingly, we must reverse the order of the lower court and grant a new hearing.

■ Appellee argues, nonetheless, that hearsay evidence is admissible in all proceedings under MHPA because hearsay evidence is admissible at the informal hearing required for an application for extended emergency treatment not to exceed twenty days. 50 P.S. § 7303(c). This contention is without merit. Appellant was committed pursuant to § 7304 which requires a formal hearing to be held in accordance with due process standards. The legislature, for whatever reason, has determined that commitments for less than twenty days do not require the same formalities as are necessary in commitments for longer periods of time.[6] Further, appellant's right to confront and cross–examine witnesses necessarily implies that hearsay evidence is inadmissible. 50 P.S. § 7304(e)(3). Moreover and in any event, considering the grave consequences following an adjudication of mental illness, under 50 P.S. § 7304, it is imperative

**6.** Whether relaxed due process standards for commitments for less than twenty days is constitutionally valid is an issue not presently before this court.

that the court strictly comply with the rules of evidence generally applicable to other proceedings which may result in an extended deprivation of an individual's liberty. The burden placed on the Commonwealth to present admissible evidence at the commitment hearing is small compared to the individual's interest in not being deprived of his or her liberty on the basis of inherently unreliable evidence. *See Commonwealth ex rel. Finken v. Roop, supra,* 234 Pa.Super. at 173–74, 339 A.2d at 773–74. *See also Lessard v. Schmidt, supra; Suzuki v. Quisenberry, supra; State ex rel. Hawkes v. Lazaro, supra.*

Order of the lower court reversed and remanded for new hearing.

PRICE, J., dissents.