*In re* COLLEEN CARMODY, a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Colleen Carmody, Respondent-Appellant).

Fourth District   No. 4—93—0858

Argued November 14, 1994.—Opinion filed July 27, 1995.

Melissa McGrath (argued), of Guardianship & Advocacy Commission, of Peoria, and Jeff Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and James Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1993, the trial court found respondent, Colleen Carmody, Ph.D., subject to involuntary admission to a mental health facility. Respondent appeals, arguing that (1) the medical certificates supporting the trial court's commitment order were deficient, (2) the trial court failed to conduct the commitment hearing within five business days from the date the petition was filed, (3) the State failed to prove by clear and convincing evidence that she was subject to involuntary commitment, (4) the trial court erred in ordering the involuntary administration of psychotropic medication, (5) she received ineffective assistance of counsel, and (6) she was confined beyond the trial court's commitment order.

We affirm in part and reverse and vacate in part.

## I. BACKGROUND

On September 1, 1993, respondent's brother filed a petition for respondent's continued involuntary admission to a mental health facility. (See 405 ILCS 5/3—813 (West 1992).) On September 9, 1993, the trial court conducted a hearing on that petition. Before the hearing, the court appointed the public defender to serve as respondent's guardian *ad litem* (GAL). However, immediately before the hearing began, respondent's privately retained counsel filed her appearance as well; nonetheless, the trial court did not dismiss the GAL. At the hearing, respondent's brother, respondent's treating psychiatrist, and respondent herself testified. After hearing the evidence and considering the arguments of counsel, the trial court found respondent subject to continued involuntary admission. Thereafter, the State requested the court to order respondent to submit to laboratory testing and to the involuntary administration of psychotropic medication. After considering further testimony from respondent's psychiatrist, the trial court granted the State's motion in full.

# II. ANALYSIS

## A. *Sufficiency of the Medical Certificates Accompanying the Petition for Involuntary Admission*

Respondent first argues that the trial court's commitment order must be reversed because (1) the record does not demonstrate that the medical certificates accompanying the petition for involuntary admission were attached to the petition at the time it was filed, (2) the identity of the physician who signed the first certificate could not be determined, and (3) respondent's privately retained counsel was not present when the trial court examined these certificates at the beginning of the hearing.

Sections 3—602 and 3—610 of the Mental Health and Developmental Disabilities Code (Code) require two certificates be filed with the trial court prior to the hearing in support of the petition for involuntary commitment. (405 ILCS 5/3—602, 3—610 (West 1992).) At the beginning of the hearing, the trial court reviewed the petition and its two accompanying certificates. The State also calls our attention to the common law record, which includes the petition and certificates. The State argues that the petition and certificates were originally stapled together, and the staple was subsequently removed. According to the State, because the documents were stapled together at the time they were filed, the circuit clerk only file stamped the top document, the petition itself. The State specifically notes that each document has similar holes at the upper left corner of the page, which it contends are from the original staple.

We reject respondent's argument without addressing the State's hypothesis. The trial court examined the petition and certificates at the beginning of the hearing and did not note any irregularity. We conclude that the record fails to support respondent's claimed error.

Respondent also contends that the trial court erred by conducting the examination of the petition and certificates before her privately retained counsel arrived for the hearing. However, the trial court had previously appointed the public defender as respondent's GAL, and the GAL was present during the court's review of the petition and certificates. The GAL was, of course, responsible for protecting respondent's interests and fully represented respondent at that time. We further note that when the trial court reviewed the petition and certificates, respondent's retained counsel had not yet filed an appearance in this case. Accordingly, we also reject respondent's contention that the trial court erred in reviewing these documents in the absence of her retained counsel.

Respondent also claims that one of the certificates was insuf-

ficient because the doctor's signature was illegible. Respondent points to no authority supporting her contention, we know of none, and we will not create such a rule now.

## B. *Timeliness of the Commitment Hearing*

■ Respondent next argues that the trial court erred because it did not hold the commitment hearing within five business days of the date the petition for involuntary admission was filed. (See 405 ILCS 5/3—611 (West 1992).) Although the State initially conceded this argument, this court has previously rejected the State's concession, explaining as follows in an order directing further briefing:

> "The Statute on Statutes (5 ILCS 70/1.11 (West 1992)) provides that 'the time within which any act provided by law is to be done shall be computed by *excluding* the first day ***.' In this case, since September 1 is the first day it must be excluded. Also excluded are Saturday through Monday, September 4 through 6, 1993, inclusive, which constituted the weekend and the Labor Day holiday. [Citation.] For that reason, the hearing on [September] 9 occurred on the fifth day." (Emphasis in original.)

Accordingly, this court has already addressed and resolved this argument against respondent.

## C. *Sufficiency of the Evidence*

Respondent next argues that the State failed to prove by clear and convincing evidence that she was subject to involuntary commitment. We disagree.

The State must prove the basis for an involuntary commitment by clear and convincing evidence. (*In re Nau* (1992), 153 Ill. 2d 406, 426, 607 N.E.2d 134, 144; 405 ILCS 5/3—808 (West 1992); *In re Knapp* (1992), 231 Ill. App. 3d 917, 919, 596 N.E.2d 1171, 1172.) This court will set aside a trial court's decision only if it was against the manifest weight of the evidence. (*Knapp*, 231 Ill. App. 3d at 919, 596 N.E.2d at 1172.) The decision of the trial court is against the manifest weight of the evidence if a review of the record clearly establishes that the decision opposite to the one reached by the trial court was the proper result. (*Knapp*, 231 Ill. App. 3d at 919, 596 N.E.2d at 1172.) Because the trial court has the opportunity to see the witnesses and hear them testify, that court is in a much superior position to determine credibility and weigh evidence. Accordingly, this court gives great deference to the trial court's findings. (*Knapp*, 231 Ill. App. 3d at 919, 596 N.E.2d at 1172.) Further, trial courts are not required to wait until the respondent inflicts harm, either upon herself or another, before ordering the respondent hospitalized. See *Knapp*, 231 Ill. App. 3d at 920, 596 N.E.2d at 1173.

■ In this case, the trial court made the following findings in rendering its decision:

"[L]et me say that I found the testimony of Dr. Gilbert [(respondent's psychiatrist)] very persuasive. Particularly, when in listening to [respondent], her entire demeanor, the content of what she said, her manner of saying it, and, also, I should note that my own observations of her demeanor in court, as other people were testifying, all served to reinforce the description that Dr. Gilbert has given in his diagnosis. *** I have heard the testimony. I have heard [respondent] explain that she is a non-violent person and I take that into consideration. Nonetheless, I do find that, because of her mental illness, that she is a danger both to herself and to others. The court has noted the impulsivity of her behavior. The court has noted, for instance, the pressured nature of her speech and the non-responsiveness to counsel's questions, when she pursues some agenda of her own as to what she wishes to say. The court has noted the hostility toward others that has been expressed in her speech. *** [T]he court finds that the evidence is much more than simply clear and convincing."

Suffice it to say that the trial court had the opportunity to view the witnesses and hear them testify, and we cannot say that "the record clearly establishes that the decision opposite to the one reached by the trial court was the proper result." (*Knapp*, 231 Ill. App. 3d at 919, 596 N.E.2d at 1172.) Accordingly, based upon this record, we hold that the trial court's decision was not against the manifest weight of the evidence. *Knapp*, 231 Ill. App. 3d at 919, 596 N.E.2d at 1172.

### D. *Trial Court's Authority To Order Involuntary Administration of Psychotropic Medication*

Respondent next argues that the trial court improperly ordered the involuntary administration of psychotropic medication. Citing this court's decision in *In re Orr* (1988), 176 Ill. App. 3d 498, 507, 531 N.E.2d 64, 70-71, respondent specifically contends that the trial court's order is void for want of statutory authority.

After the trial court ordered respondent's hospitalization, the State requested "that there would be a specific direction that they can give [respondent] medication and do the lab evaluations." The trial court then received additional evidence from respondent's psychiatrist and invited counsel to question the doctor. Respondent's attorney declined. The court then granted the State's request to allow the involuntary administration of psychotropic medication, and the court included that provision on its written order of involuntary commitment.

Respondent directs our attention to section 2—107 of the Code, which provides as follows: "An adult recipient of services *** shall be given the opportunity to refuse generally accepted mental health *** services, including but not limited to medication." (405 ILCS 5/2—107 (West 1992).) Respondent contends that section 2—107 unequivocally permits her to refuse the administration of psychotropic medication and that the trial court's order was therefore void. We disagree and instead view section 2—107.1 of the Code (405 ILCS 5/2—107.1 (West 1992)) as governing the administration of psychotropic drugs. *People v. DeJesus* (1994), 263 Ill. App. 3d 487, 489, 636 N.E.2d 112, 113.

Section 2—107.1 of the Code provides that a trial court may order the involuntary administration of psychotropic medication under certain circumstances. Respondent maintains that the State must "file a petition seeking the forced administration of psychotropic medications" before the trial court can order it pursuant to section 2—107.1. The State responds that the statute only requires non-State entities to file a petition, and that it is therefore not required to do so. The State contends that because it sought the forced administration of psychotropic medication, the procedural steps contained in section 2—107.1 of the Code do not apply. We disagree.

In *In re C.E.* (1994), 161 Ill. 2d 200, 206-07, 641 N.E.2d 345, 348, quoting section 2—107 (405 ILCS 2—107 (West 1992)), the supreme court addressed a trial court's authority to order the involuntary administration of psychotropic medication as follows:

"Generally, under the Mental Health Code [citation], an adult recipient of mental health services or the recipient's guardian has the authority and the right to refuse recommended mental health services, including medication. ***

The Mental Health Code further provides that [pursuant to section 2—107,] the recommended mental health services may be administered against the wishes of the recipient or guardian when 'such services are necessary to prevent the recipient from causing serious harm to himself or others.' "

The court then addressed section 2—107.1 of the Code, which delineates the nonemergency circumstances under which psychotropic medication may be involuntarily administered. The court held that section 2—107.1 permits the involuntary administration of psychotropic medication only if "the standards and procedures set out in the section are satisfied." *C.E.*, 161 Ill. 2d at 208, 641 N.E.2d at 349.

A mentally ill individual subject to involuntary commitment retains a constitutional right to refuse the administration of psychotropic medication. (*C.E.*, 161 Ill. 2d at 213, 641 N.E.2d at 351; see also

*Washington v. Harper* (1990), 494 U.S. 210, 221, 108 L. Ed. 2d 178, 197-98, 110 S. Ct. 1028, 1036.) As a result, a trial court's order to administer psychotropic medication against the wishes of a patient must strictly comply with the standards set forth in section 2—107.1 of the Code. *C.E.*, 161 Ill. 2d at 218, 641 N.E.2d at 353.

Section 2—107.1(a) of the Code provides that "[a]ny person *** may petition the circuit court" for an order to authorize the involuntary administration of psychotropic medication. (405 ILCS 5/2—107.1(a) (West 1992).) In addition, section 2—107.1(b) requires that "[t]he court shall hold a hearing within 30 days of the filing of the petition." (405 ILCS 5/2—107.1(b) (West 1992).) Thus, we hold that section 2—107.1 of the Code specifically contemplates the formal filing of a written petition seeking the involuntary administration of psychotropic medication before a trial court can issue such an order. See *In re Robinson* (1992), 151 Ill. 2d 126, 132-33, 601 N.E.2d 712, 716 (holding that section 3—810 of the Code (Ill. Rev. Stat. 1989, ch. 91$^{1}$/$_{2}$, par. 3—810) implicitly requires a written predispositional report).

The supreme court essentially recognized this in *C.E.* in holding that "under section 2—107.1, *a petition must be filed* in the circuit court requesting a court order to administer the medication." (Emphasis added.) (*C.E.*, 161 Ill. 2d at 208, 641 N.E.2d at 349.) We also note that this language is not limited to non-State petitioners. Accordingly, we reject the State's contention that the provisions of section 2—107.1 only apply to "non-State entities" and instead hold that it requires compliance from any party seeking the involuntary administration of psychotropic medication.

The supreme court also construed section 2—107.1 to require the trial court to conduct a hearing before ordering the involuntary administration of medication. (*C.E.*, 161 Ill. 2d at 219, 641 N.E.2d at 354.) In addition to the hearing requirement, the supreme court then concluded that the statute implicitly imposes a notice requirement as well. The court specifically held as follows:

> "[S]ection 2—107.1 implicitly requires the [trial] court to notify the mental health recipient and his counsel of the date, time and place of the court's hearing on the petition to order the involuntary administration of psychotropic medication. *** [W]e conclude that the trial court must ensure that notice of the date, time and place of the section 2—107.1 hearing is served upon the mental health recipient, his attorney, his guardian (if any), and any other interested parties to the proceeding." (*C.E.*, 161 Ill. 2d at 225-26, 641 N.E.2d at 357.)

Accordingly, section 2—107.1 of the Code requires that (1) a petition

for the involuntary administration of psychotropic medication must be filed prior to the date of the hearing, and (2) the trial court must provide notice to the interested parties, including the respondent, of that hearing.

■ In this case, the trial court considered the State's request for an order to administer psychotropic medication without filing a formal petition for such an order and without providing notice to respondent or any other party. Although respondent was present with counsel when the court received and considered the State's request, the court exceeded its authority under section 2—107.1 by failing to require the filing of a formal petition and to provide proper notice. (*C.E.*, 161 Ill. 2d at 225-26, 641 N.E.2d at 357.) As a result, we reverse the trial court's decision and vacate its order approving the involuntary administration of psychotropic medication.

### E. *Ineffective Assistance of Counsel*

Respondent next argues that she received ineffective assistance of counsel. Apparently, no Illinois court of review has yet squarely addressed whether a respondent in an involuntary commitment proceeding has the right to the effective assistance of counsel. For the reasons that follow, we hold that she does.

There are two possible bases for a right to the effective assistance of counsel in involuntary commitment proceedings: (1) a State or Federal constitutional right; or (2) a statutory right implicitly arising from the statutory requirement that respondents in an involuntary commitment proceeding be provided counsel. (See 405 ILCS 5/3—805 (West 1992).) Because a court will avoid determining a constitutional question if the matter can be resolved on other, nonconstitutional grounds (*People v. McDaniel* (1995), 164 Ill. 2d 173, 180, 647 N.E.2d 266, 269), we address the statutory issue first.

■ The Code guarantees every respondent subject to involuntary commitment the right to counsel. (405 ILCS 5/3—805 (West 1992); *In re Tiffin* (1995), 269 Ill. App. 3d 581, 585, 646 N.E.2d 285, 287.) In a sixth amendment context, the United States Supreme Court has held that " 'the right to counsel is the right to the effective assistance of counsel.' " (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 773 n.14, 90 S. Ct. 1441, 1449 n.14.) Similarly, we hold that the State's statutorily providing a respondent in an involuntary commitment proceeding with the right to counsel implicitly includes the right to the effective assistance of that counsel. See *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692, 104 S. Ct. at 2063; *In re Martens* (1995), 269 Ill. App. 3d

324, 327, 646 N.E.2d 27, 29 (statutory provisions must be construed strictly in favor of patient).

In *Strickland*, the Court held that the sixth amendment right to counsel "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney *** who plays the role necessary to ensure that the trial is fair." (*Strickland*, 466 U.S. at 685, 80 L. Ed. 2d at 692, 104 S. Ct. at 2063.) As a result, the Court concluded that it would be incongruous for the sixth amendment to require the assistance of counsel but permit that counsel to be prejudicially ineffective.

In the same way, we conclude that the legislature could not have intended to provide an individual subject to involuntary commitment with the right to counsel and to permit that counsel to be prejudicially ineffective. Thus, the statutory right to counsel contained in section 3—805 of the Code includes the right to effective assistance of counsel. In so holding, we agree with the court in *In re Hutchinson* (1980), 279 Pa. Super. 401, 408-09, 421 A.2d 261, 264-65, wherein it held as follows:

> "The legislature has recognized the importance of this right [of counsel] and specifically has mandated that a person be represented by counsel either privately retained or provided by the court. [Citation.] In order for this right to be meaningful, the appointed counsel must be competent and adversarial. *** If the representation of an alleged mental incompetent is not required to be 'effective' in the same constitutional sense as the representation of the criminally accused, the right to counsel provided by [statute] would become a hollow gesture serving only superficially to satisfy due process requirements. Indeed, the absence of the guiding hand of competent counsel would vitiate not only the [respondent's] right to counsel but would also emasculate the other protections guaranteed by [statute] ***."

Having concluded that respondent is entitled to the effective assistance of counsel, we must determine what standard by which to review counsel's performance. Both respondent and the State contend that the *Strickland* test should apply, and we agree. Although grounded in the sixth amendment, we believe that *Strickland* provides a reasonable and workable standard for reviewing claims of ineffective assistance of counsel. Accordingly, we adopt the *Strickland* standard—and its accompanying analysis for reviewing claims of ineffective assistance of counsel—in involuntary commitment proceedings.

We have considered that the differences between a criminal case

and an involuntary commitment proceeding may cause the familiar *Strickland* analysis to move uneasily from the criminal arena to an involuntary commitment proceeding. In a criminal case, the resolution of a defendant's claim of ineffective assistance is more often properly resolved in proceedings on a petition for post-conviction relief (see 725 ILCS 5/122—1 *et seq.* (West 1992)) rather than on direct appeal. (*People v. Kunze* (1990), 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296.) This is because the record on direct appeal in a criminal case rarely contains anything explaining the tactics of trial counsel. Thus, if "those trial tactics are to be the subject of scrutiny, then a record should be developed in which they can be scrutinized." (*People v. Fields* (1990), 202 Ill. App. 3d 910, 917, 560 N.E.2d 1220, 1224 (Steigmann, J., specially concurring).) However, we conclude that the *Kunze* concerns do not apply with equal force in involuntary commitment proceedings.

Unlike a criminal case, the inquiry in an involuntary commitment proceeding focuses more upon whether the respondent's counsel acted so as to hold the State to its burden of proof and its procedural requirements. The *Strickland* Court emphasized that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." (*Strickland,* 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) In reviewing a claim of ineffective assistance of counsel in an involuntary commitment proceeding, the record on direct appeal typically demonstrates whether counsel's performance provided a sufficient defense for the respondent. In other words, the record shows whether counsel called procedural irregularities or clear shortcomings in the State's proof to the attention of the trial court. As a result, the record on direct appeal of an involuntary commitment proceeding will more readily reflect whether counsel's conduct so undermined the proceeding as to call into question whether it produced a just result. (See *Strickland,* 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) Further, we note that in involuntary commitment proceedings, as opposed to post-conviction criminal proceedings, no issues are likely to arise regarding respondent's counsel's failure to adequately investigate or prepare for trial, or counsel's failure to pursue defenses or witnesses as suggested by his client.

We also note that the *Strickland* analysis has been adopted into a variety of other noncriminal settings. For example, this court adopted *Strickland* for evaluating claims of ineffective assistance of counsel in a general civil law context (*Cogan v. KAL Leasing, Inc.*

(1989), 190 Ill. App. 3d 145, 153, 546 N.E.2d 20, 25), and for determining whether an attorney's alleged malpractice in representing a client in a divorce proceeding can serve as the basis for the client's subsequent claim that he lost custody or visitation rights as a result of the attorney's alleged malpractice (*Person v. Behnke* (1993), 242 Ill. App. 3d 933, 940, 611 N.E.2d 1350, 1355-56). Also, the *Strickland* standard has been applied to judge a claim of ineffective assistance of counsel in parental rights' terminations (*In re R.G.* (1988), 165 Ill. App. 3d 112, 127, 518 N.E.2d 691, 700-01), as well as abuse and neglect cases (*In re Kr.K.* (1994), 258 Ill. App. 3d 270, 280, 631 N.E.2d 449, 455).

Under *Strickland*, the respondent must establish that (1) counsel's performance was deficient, such that the errors were so serious that counsel was not functioning as the "counsel" contemplated by the Code; and (2) counsel's errors were so prejudicial as to deprive her of a fair proceeding. See *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

■ In this case, respondent specifically argues that her counsel's performance was deficient by failing (1) to object in any way to the trial court's consideration of the State's request for an order to administer psychotropic medication; and (2) to object regarding her claimed errors pertaining to the certificates accompanying the petition for involuntary commitment.

In light of our holding that the trial court erred in authorizing the involuntary administration of psychotropic medication, we need not consider respondent's argument regarding that issue. Furthermore, because we have held that no reversible error occurred regarding the petition for involuntary commitment or accompanying certificates, respondent's counsel—either the GAL or the privately retained counsel—was not ineffective for failing to object or pursue that matter further. Having reviewed the record in its entirety, we conclude that respondent has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

As a result of our holding that respondent has the right to effective assistance of counsel by virtue of her statutory right to counsel, we need not reach the constitutional question. See *McDaniel*, 164 Ill. 2d at 180, 647 N.E.2d at 269.

The State also argues that respondent's appellate counsel, the Legal Advocacy Service, should routinely intervene and be responsible for representing respondents in involuntary commitment proceedings at the trial level. This contention does not address the sufficiency of re-

spondent's trial counsel in this case and would not automatically establish the effectiveness of trial counsel in another proceeding. The State's suggestion "requires no further discussion by this court." *People v. Coleman* (1994), 158 Ill. 2d 319, 348, 633 N.E.2d 654, 669.

### F. *Respondent's Confinement*

■ Respondent last argues that she remained committed beyond the period specified in the trial court's order. The court's written order committing respondent to a mental health facility did not on its face specify the duration of that commitment. However, the reverse side of the commitment order contained information under the caption "Notice to persons receiving this order," and included a statement that an initial order for involuntary commitment is valid for no more than 60 days. Respondent contends that this language restricted the trial court's order to a commitment not exceeding 60 days.

Section 3—813(a) of the Code provides that an initial order for hospitalization shall be for a period not to exceed 180 days. (405 ILCS 5/3—813(a) (West 1992).) This is a departure from an earlier version of the statute which provided that the period of initial hospitalization not exceed 60 days. (See Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a).) The State contends that the trial court mistakenly used an outdated form ordering respondent's commitment and that any error is harmless.

We initially note that a trial court's order of involuntary commitment need not specify a fixed period of hospitalization. (*Robinson*, 151 Ill. 2d at 139, 601 N.E.2d at 719.) Accordingly, the trial court's order in this case was not facially deficient for failing to clearly set forth a fixed period of hospitalization.

However, it is elementary that this court reviews the decisions and orders of the trial court at the time they were entered. When it was entered, the trial court's order did not constitute error and respondent's subsequent period of hospitalization is therefore irrelevant to our assessment of the trial court's judgment. Thus, respondent's contention regarding her period of hospitalization subsequent to the time the trial court entered its order is not properly before this court on review.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's order of involuntary commitment but reverse its decision and vacate the order approving the involuntary administration of psychotropic medication.

Affirmed in part; reversed and vacated in part.

KNECHT, P.J., and GREEN, J., concur.