# Illinois Official Reports

## Appellate Court

*In re Jessica H.*, 2014 IL App (4th) 130399

| | |
|---|---|
| Appellate Court Caption | In re: JESSICA H., a Person Found Subject to Involuntary Admission, THE PEOPLE OF THE STATE OF ILLINIOS, Petitioner-Appellee, v. JESSICA H., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0399 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | August 14, 2014<br><br>September 17, 2014<br>September 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent's third consecutive involuntary commitment was vacated by the appellate court, notwithstanding the fact that her appeal was moot, since the "public interest" exception to the mootness doctrine applied, and the record showed that respondent was denied effective assistance of counsel when her counsel failed to discover that the recommitment order was untimely to the extent that it was filed 8 days after the previous order expired and she was prejudiced by being detained for 8 days without a valid order, and furthermore, the order was for 180 days, rather than 90 days, and respondent lost the benefit of more frequent assessments of her condition in light of the requirement that she be detained in the least-restrictive facility available and able to meet her needs. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 13-MH-217; the Hon. Steven H. Nardulli, Judge, presiding. |
| Judgment | Order vacated. |

Counsel on
Appeal

Veronique Baker, of Guardianship & Advocacy Commission, of Chicago, and Laurel Spahn, of Guardianship and Advocacy Commission, of Hines, for appellant.

John Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justices Pope and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    In September 2012, the trial court found respondent, Jessica H., subject to involuntary commitment, committing her for 90 days. In December 2012, respondent was recommitted pursuant to an order expiring on March 21, 2013. On March 29, 2013, a third recommitment petition was filed. Following a hearing, the court granted the petition, committing respondent for 180 days.

¶ 2    Respondent appeals, arguing that although her claim is moot, it fits within two recognized exceptions to the mootness doctrine. On the merits, she argues this court should reverse the trial court's recommitment order because the recommitment petition was untimely and because respondent received ineffective assistance of counsel due to counsel's failure to object to the untimely petition. The State concedes two recognized exceptions to the mootness doctrine apply and concedes respondent received ineffective assistance of counsel. We conclude the "public interest" exception applies to respondent's claim and agree respondent received ineffective assistance of counsel at the hearing. We vacate the trial court's order.

¶ 3                              I. BACKGROUND
¶ 4                            A. Previous Orders
¶ 5    Respondent was first admitted to McFarland Health Center (McFarland) on September 28, 2012, following an initial commitment hearing on September 27, 2012. Respondent, then 30 years old, had previously been staying at El Paso Nursing Home. The trial court ordered respondent hospitalized for a period not to exceed 90 days, or until December 27, 2012. Before the December order expired, respondent filed a petition for discharge in Sangamon County. On October 26, 2012, the court denied this petition, leaving the previous commitment order in effect. On December 21, 2012, following a hearing, the trial court found respondent was subject to continued commitment at McFarland. This order remained in effect for 90 days, or until March 21, 2013.

¶ 6                                B. Recommitment Petition

¶ 7        On March 29, 2013, staff at McFarland filed a petition for involuntary admission and an individual treatment plan, pursuant to sections 3-601 and 3-813 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-601, 3-813 (West 2012)). The petition asserted respondent was a person with a mental illness in need of immediate hospitalization, as she had no insight into her mental illness or need for medication, continued to experience psychosis, was unable to care for herself, and posed a threat to herself and others due to her distorted view of reality. Proof of service was filed with the petition, indicating notice was sent to respondent's parents, Mr. and Mrs. H., who serve as her guardians. On April 1, 2013, the court appointed attorney Robert Scherschligt to represent respondent.

¶ 8                                   C. The Hearing

¶ 9        On April 5, 2013, the trial court held a hearing on the petition for involuntary admission. Attorney Sam Qui represented respondent at the hearing. Counsel for respondent did not motion for discharge or notify the court the petition was untimely. Doctor Rachel Harlan Link, respondent's treating psychiatrist, testified respondent has been diagnosed with schizoaffective disorder, bipolar type, and her symptoms include delusional thoughts and hallucinations. Dr. Link described some of respondent's hallucinations, incidents where Jessica was aggressive to peers and staff at McFarland. Dr. Link stated, if discharged, respondent would not take medication as directed and would be unable to provide a safe environment for herself.

¶ 10       Respondent lived in a nursing facility before she was admitted to McFarland. McFarland staff investigated placing respondent in two locked nursing facilities as an alternative to hospitalization. Dr. Link testified both facilities determined they could not provide for respondent's needs because of her ongoing symptoms. While at times respondent's testimony was disjointed and not based in reality, she clearly requested the court send her to a nursing home.

¶ 11       The trial court ordered respondent recommitted, finding respondent suffered from a mental illness and, because of her illness, can "reasonably be expected to harm others or place other individuals in reasonable expectation of being physically harmed," is unable to provide for her own basic needs, is likely to deteriorate further, and is in need of immediate hospitalization. The court stated it would order respondent to remain at McFarland but order McFarland staff to "exercise their best efforts to try to find a nursing home that [respondent] can go to."

¶ 12                         D. Subsequent Procedural History

¶ 13       Respondent appealed. In November 2013, appointed appellate counsel, the Guardianship and Advocacy Commission (Guardianship), moved to withdraw as counsel on appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting "no grounds exist which would warrant relief in this Court." On February 4, 2014, this court directed Guardianship to provide documentation demonstrating the dates of respondent's previous commitment orders.

¶ 14       Upon obtaining these orders, Guardianship concluded the third recommitment petition was filed eight days late, moved to withdraw its *Anders* motion, and requested leave to file a brief. We allowed both requests. Guardianship now argues the recommitment order should be

reversed because the petition was untimely and respondent received ineffective assistance of counsel at the hearing. Guardianship did not file a motion to supplement the record but attached the previous commitment orders as appendices to its brief.

<h2>II. ANALYSIS</h2>

¶ 16     We first note that while Guardianship did comply with this court's order to provide documentation demonstrating the dates of Jessica H.'s prior commitment orders, the proper method to do so was not used. When supplementing the record, Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006) is controlling and should be followed. However, in the interest of judicial economy and because the previous orders are necessary for our resolution of this case, we will treat respondent's appendices as a motion to supplement the record and grant it.

<h2>A. Mootness</h2>

¶ 18     Guardianship argues that although respondent's claims are moot, they fall within the "public interest" and "capable of repetition yet avoiding review" exceptions to the mootness doctrine. The State concedes both exceptions apply. As we find the "public interest" exception applies to respondent's claims, we do not address the "capable of repetition yet avoiding review" exception.

¶ 19     "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009). Illinois courts will, however, consider an otherwise moot issue when a recognized exception to the mootness doctrine applies. *Id.* One recognized exception, the "public interest" exception, has three elements. *Id.* at 355, 910 N.E.2d at 80. First, the question presented must be one of a public nature. Second, there must be a reasonable need for an authoritative determination for the future guidance of public officers. Finally, there must be a likelihood of future recurrence of the question. *Id.*

¶ 20     Here, as entry of the recommitment order violated mandatory statutory language and implicates one's constitutional rights, the issue is one of a public nature. Also, the court, the State, and counsel for respondent failed to appreciate the mandatory statutory requirements given the posture of this case. In addition, a determination as to the statutorily required outcome when presented with facts such as those in this matter is needed. Such a determination would provide for the future guidance of public officers. Finally, in light of the large number of individuals impacted by subsequent involuntary-commitment proceedings, there is a likelihood of future recurrence of the question presented. Thus, we conclude the "public interest" exception applies to respondent's claims.

<h2>B. Ineffective Assistance of Counsel</h2>

¶ 22     Respondent argues this court should reverse the trial court's order because the recommitment petition was untimely and she received ineffective assistance of counsel. The State concedes respondent received ineffective assistance of counsel. We accept the State's concession.

¶ 23     Persons subject to involuntary-commitment proceedings are entitled to effective assistance of counsel. *In re Carmody*, 274 Ill. App. 3d 46, 55, 653 N.E.2d 977, 984 (1995). In *Carmody*,

this court adopted the standard articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for reviewing ineffective-assistance-of-counsel claims in involuntary-commitment proceedings. *Carmody*, 274 Ill. App. 3d at 55, 653 N.E.2d at 984. "Under *Strickland*, the respondent must establish that (1) counsel's performance was deficient, such that the errors were so serious that counsel was not functioning as the 'counsel' contemplated by the Code; and (2) counsel's errors were so prejudicial as to deprive her of a fair proceeding." *Id.* at 57, 653 N.E.2d at 985.

¶ 24                                 1. *Counsel's Performance*

¶ 25    The benchmark for judging any claim of ineffectiveness "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. In judging counsel's effectiveness in an involuntary-commitment proceeding, courts focus "upon whether the respondent's counsel acted so as to hold the State to its burden of proof and its procedural requirements." *Carmody*, 274 Ill. App. 3d at 56, 653 N.E.2d at 984.

¶ 26    Respondent's counsel did not hold the State or the trial court to the Code's procedural requirements. Section 3-813(a) of the Code states "[i]f no petition is filed prior to the expiration of the initial order, the recipient shall be discharged." 405 ILCS 5/3-813(a) (West 2012). Respondent's second consecutive commitment order expired on March 21, 2013. McFarland staff filed the recommitment request eight days later, on March 29, 2013. Respondent's trial counsel did not notify the court the petition was untimely. It appears counsel did not obtain the previous orders, which were not in the trial court's record, to check whether the petition was timely. Rather, counsel appears to have relied on McFarland staff and the State to file a timely petition. Guardianship, respondent's appellate counsel, did not become aware the petition was untimely until we ordered it to provide the dates of the previous orders. If this information was not in the trial court record, counsel had an obligation to seek it out because doing so is the only way to ensure the petition is timely.

¶ 27    The first prong of the *Strickland* test is satisfied because respondent was recommitted, without objection from counsel, pursuant to a petition in clear violation of section 3-813.

¶ 28                                       2. *Prejudice*

¶ 29    We also agree respondent was prejudiced by the eight-day delay. The statutory language of section 3-813 is mandatory because it "dictates a particular consequence for failure to comply with the provision." (Internal quotation marks omitted.) *In re Rita P.*, 2014 IL 115798, ¶ 43, 10 N.E.3d 854 (quoting *In re M.I.*, 2013 IL 113776, ¶ 16, 989 N.E.2d 173, quoting *People v. Delvillar*, 235 Ill. 2d 507, 514, 922 N.E.2d 330, 335 (2009)). Section 3-813 explicitly requires a committed person to be discharged if a successive petition for recommitment is not filed before the previous commitment order expires. See *In re Luttrell*, 261 Ill. App. 3d 221, 229, 633 N.E.2d 74, 80 (1994). Thus, had counsel informed the court the petition was late, the trial court would have dismissed the State's recommitment petition.

¶ 30    Because respondent's counsel did not inform the court the petition was untimely and move for discharge, respondent was detained for eight days without a valid court order. Further, the trial court's order on appeal was respondent's third consecutive commitment order. As a result, respondent was committed for 180 days under the order, rather than 90. See 405 ILCS

5/3-813(a) (West 2012). In *In re Nau*, 153 Ill. 2d 406, 422-23, 607 N.E.2d 134, 142 (1992), the supreme court reasoned the committed person was not prejudiced by a recommitment petition filed one day late. The court explained, "had respondent made a timely objection, the State would simply have withdrawn its petition for continued hospitalization and filed instead a petition for initial commitment." *Id.* at 421, 607 N.E.2d at 141. The court noted it was insignificant whether the petition was labeled an additional petition or an initial petition. *Id.* at 422, 607 N.E.2d at 142. The court stated "[t]he obvious purpose behind section 3-813 is to prevent patient neglect and to ensure that an involuntarily committed patient's eligibility for commitment is reevaluated at regular intervals" and this "purpose was not frustrated by the one-day delay in this case." *Id.*

¶ 31        Unlike the one-day delay in *Nau*, the eight-day delay here was longer and had a substantial effect on respondent's rights. Had the trial court known the petition was untimely, the court would not have granted the recommitment petition. Respondent would have been discharged, even if she would not have been able to physically leave McFarland. See *In re Andrew B.*, 237 Ill. 2d 340, 355-56, 930 N.E.2d 934, 943 (2010) (discharge under section 3-813 does not require actual physical release from a mental health facility). The State would then likely have filed a new initial petition to commit respondent. While it is likely this initial petition would have been granted, as the evidence for involuntary commitment was strong and the required burden of proof would have been the same, the order would have lasted 90 days, rather than 180 days.

¶ 32        More frequent review would have benefited respondent. Before coming to McFarland, respondent was housed in a nursing home and she had been evaluated by two locked facilities, which were unable to take her due to her ongoing symptoms. In rendering its judgment, the trial court explained to respondent it was ordering McFarland staff to "exercise their best efforts to try to find a nursing home that [respondent] can go to." Respondent would have benefited from more frequent assessment of McFarland's efforts to ensure she was detained in the least-restrictive facility available and able to meet her needs.

¶ 33        In *Luttrell*, we addressed the argument a committed person cannot suffer prejudice due to a late petition for continued commitment because the State could have withdrawn the petition for continued hospitalization and filed a petition for initial commitment. We stated, "we disagree with any suggestion the supreme court in *Nau* impliedly approved circumventing statutory procedures for continued hospitalization." *Luttrell*, 261 Ill. App. 3d at 229, 633 N.E.2d at 80. We questioned "the propriety of permitting the State to disregard the procedures for continued hospitalization, detain the respondent in the mental health facility beyond the expiration of the original order of commitment despite the clear language of the statute, and then follow those procedures for initial hospitalization, where it is not initial but continued hospitalization that is sought." *Id.* at 230, 633 N.E.2d at 80. Here, the eight-day delay constitutes prejudice because it is inconsistent with the Code's purpose to ensure periodic review of involuntary-commitment cases. See *Nau*, 153 Ill. 2d at 422, 607 N.E.2d at 142.

¶ 34        We note, our conclusion differs from the Fifth District in *In re Kevin S.*, 381 Ill. App. 3d 260, 267-68, 886 N.E.2d 508, 516 (2008), concluding a committed person was not prejudiced by a few days' delay in the filing of a recommitment petition even though an "[o]bjection[ ] by trial counsel might have resulted in additional proceedings." In *Kevin S.* the petition was at most only a few days late (*id.* at 267, 886 N.E.2d at 516), while the petition in this case was eight days late. The court in *Kevin S.* also concluded the petitioner would not have benefited

from more frequent hearings reviewing the commitment petition. Here, as we have stated, respondent clearly would have benefited from more frequent review of her case.

¶ 35 We conclude respondent was prejudiced by counsel's error. We agree with the parties that respondent received ineffective assistance of counsel. Given our determination respondent received ineffective assistance of counsel and was prejudiced, we need not address respondent's argument that the State failed to ensure the filing of a proper petition.

¶ 36                                III. CONCLUSION

¶ 37 For the reasons stated, we vacate the trial court's commitment order.

¶ 38 Order vacated.