# Illinois Official Reports

## Appellate Court

---

### *In re E.F.*, 2014 IL App (3d) 130814

---

| | |
|---|---|
| Appellate Court Caption | *In re* E.F. (The People of the State of Illinois, Petitioner-Appellee, v. E.F., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-13-0814 |
| Filed | September 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order allowing respondent's medical providers to administer psychotropic medications to respondent was reversed, since the trial court failed to conduct separate hearings on the petition for respondent's involuntary commitment and the petition for administration of psychotropic medication, the trial court did not specify the exact medications and dosages to be administered, and even though respondent was advised in writing of the side effects, risks, and benefits of the treatment and the record set forth sufficient findings of fact and law to satisfy section 3-816(a) of the Mental Health and Developmental Disabilities Code, he was not advised in writing of the alternatives to the proposed treatment. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 13-MH-13; the Hon. Daniel J. Bute, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

Counsel on
Appeal

Penelope Smith, of Guardianship and Advocacy Commission, of Anna, for appellant.

Brian Towne, State's Attorney, of Ottawa (Laura E. DeMichael, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices McDade and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    The State filed both a petition seeking to involuntarily commit respondent, E.F., to a treatment facility for inpatient mental health treatment and a petition for the administration of psychotropic medication. In a single order, the circuit court of La Salle County granted both petitions. Respondent appeals from the order, claiming, *inter alia*, that the trial court failed to conduct the necessary hearings as prescribed by statute prior to ordering the administration of psychotropic medication. Respondent further claims the State failed to provide him proper written notice of the risks and benefits of medications it sought to administer to him or alternatives to such treatment. Respondent also argues the court's order fails to properly identify which medications, and their corresponding dosages, the State is authorized to administer to him.

¶ 2                                                    BACKGROUND
¶ 3    The State filed its petition seeking involuntary commitment of respondent on October 16, 2013. The petition specifically alleges that respondent was being detained at Illinois Valley Community Hospital pursuant to an emergency admission certificate.
¶ 4    The petition continued, claiming that respondent is a person with mental illness who, due to that illness, is reasonably expected to engage in conduct likely to cause harm to him or others. Respondent refused treatment or was not adequately adhering to previously prescribed treatment. As such, the State alleged through the petition that it was necessary to involuntarily commit respondent for treatment so that he would not cause harm to him or others.
¶ 5    The petition identified three witnesses who would testify that respondent "stated someone is out to get him. Wife states demons are talking to him and are in the walls trying to get him. They are telling him to take his life. Convinced wife is in danger."

- 2 -

¶ 6    While the petition states there was only one certificate of examination attached, it appears from the record on appeal that there were actually two certificates of examination attached. One examination was conducted by Serge Golber, M.D., and the other by Atul Sheth, M.D. Both were conducted on October 14, 2013.

¶ 7    The certificates note that respondent is in need of immediate hospitalization to prevent harm to him. The certificates indicate that respondent is delusional, experienced ideas of persecution and was responding to "internal stimuli." The certificates further indicate that the respondent is "extremely paranoid" and "thinks people are out to get him." One physician described respondent's behavior as "bizarre" and noted that respondent was "responding defensively to this paranoia."

¶ 8    After the State filed its original petition on October 16, 2013, the trial court entered an order appointing the public defender to represent respondent, continued the matter until October 21, 2013, for a mental health hearing, and directed the sheriff to transport respondent to and from the Illinois Valley Community Hospital as needed.

¶ 9    At the October 21 hearing, the State noted that it filed a separate petition that morning seeking to allow doctors to administer psychotropic medication. The new petition included a treatment program. The hearing began and the State called Dr. Atul Sheth as its first witness.

¶ 10    Dr. Sheth testified that he is a board-certified psychiatrist who examined respondent at least four or five times in the month prior to his testimony, as respondent had been visiting "several of the different emergency rooms in this area." Dr. Sheth had not seen respondent before that time.

¶ 11    Respondent presented at the emergency room "feeling very paranoid about people following him and trying to attack him." During these visits, Sheth thought that respondent was cooperative. Respondent was given "prescriptions that he never filled." Sheth observed that respondent's behavior escalated as the visits continued. Respondent had been given Haldol and lorazepam in the emergency room and prescriptions for Geodon in an attempt to treat him on an outpatient basis.

¶ 12    On one occasion at the emergency room, respondent grabbed a knife from his wife's purse and barricaded himself in a room, refusing any help at that time. Respondent claimed that the emergency room was bugged and felt people were watching and recording him.

¶ 13    Dr. Sheth stated that during the last emergency room visit, he concluded that respondent's aggression and impulsivity had escalated to a point to where respondent was a danger to himself or others. Respondent lacked the ability to reason. Dr. Sheth ultimately diagnosed respondent with paranoid schizophrenia.

¶ 14    Dr. Sheth testified that he did not believe continued attempts at outpatient treatment would be successful given the attempts in the past. He did not believe respondent to be capable of following through on any outpatient recommendations. Dr. Sheth recommended a period of commitment of 30 to 60 days. After that period, Dr. Sheth was hopeful that respondent would be "insightful enough to be treated on outpatient."

¶ 15    The State rested after Dr. Sheth's testimony. The defense then called respondent's wife, Z.F., to testify. Z.F. stated that she had been married to the respondent for nine years. She believed a cause of her husband's current condition revolved around his significant struggle with alcohol for the past four or five years. He tried to "detox on his own," which led to him seeking treatment at various emergency rooms.

¶ 16    Z.F. observed symptoms of jaundice, sweats, rapid heart rate, blood pressure issues, swelling of the legs, and "GI" problems in her husband. She attributed all these to his attempts to "detox" from his alcohol addiction. She indicated that her husband would routinely start to drink again, then abruptly stop. Each attempt to stop drinking resulted in his paranoia progressing.

¶ 17    Z.F. described the paranoia as an expression of not feeling "safe at home or anywhere really in general." She admitted respondent went to the emergency room to deal with feelings of paranoia, but denied that Dr. Sheth ever sent respondent home with any prescriptions.

¶ 18    Z.F. was at the hospital during one of respondent's visits. Respondent was in the intensive care unit "having some paranoia issues" when he grabbed her pocket knife from her purse. Respondent then backed up against the wall and "said please, I got to get out of this room. Put me in a different room." Eventually the staff and Z.F. obtained the knife from respondent and he was transferred to another room.

¶ 19    Z.F. stated she believed her husband would adhere to an outpatient therapy plan. By the time she testified at the hearing, he had been hospitalized for approximately one week and she could "see him already changing." She claimed all his mental problems were caused by his attempts to stop drinking "and now that he has had a week and a half to sober up, I see a change in him."

¶ 20    Following closing arguments the court informed the parties that it did not believe respondent could "handle this by" himself. It then issued a written order, dated October 21, 2013, which states:

> "Following hearing on petition for involuntary mental health treatment, the court hereby finds that the respondent is in need of inpatient mental health treatment. Defendant is remanded to the care and custody of OSF St. Elizabeth for transfer to DHS. Petition for psychotropic medication as outlined is granted, and OSF and DHS may administer medications as noted."

¶ 21    The order concludes by setting another hearing for November 20, 2013, and directs the medical providers to provide a progress report to all parties prior to the hearing. Respondent appeals.

¶ 22                                    ANALYSIS

¶ 23    The parties agree that the order from which respondent appeals, entered October 21, 2013, was effective for, at most, 90 days pursuant to section 2-107.1 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/2-107.1(a-5)(5) (West 2012)) ("In no event shall an order issued under this Section be effective for more than 90 days."). The parties also agree that, as such, the underlying case is moot.

¶ 24    Respondent, however, requests we address the substance of his appeal under various exceptions to the mootness doctrine. The State responds, arguing that we should dismiss this appeal as moot, claiming respondent fails to satisfy all the necessary requirements of the mootness exception. We review the question of whether a moot case falls within one of the exceptions to the mootness doctrine *de novo*. *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009).

¶ 25    "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *Id*. at 351. Our supreme court has "never adopted [a] general exception" to the

mootness doctrine for mental health cases "that some appellate court panels have 'recognized.' " *Id*. at 353. Instead, our supreme court has been clear that mental health cases are to be evaluated using a "case-by-case approach" to determine whether one of the mootness exceptions applies. *Id*. at 354.

¶ 26 The *Alfred H.H.* court outlined three exceptions to the mootness doctrine which are the same three invoked by the respondent herein. Those exceptions are: (1) the public interest exception; (2) the "capable of repetition yet avoiding review" exception; and (3) the collateral consequences exception. We find that the "capable of repetition yet avoiding review" exception dictates appellate review of this matter is appropriate. As such, we need not address the parties' arguments concerning the other two exceptions.

¶ 27 Before turning to the mootness exception, we note that respondent only appeals from the portion of the October 21, 2013, order that allows for the administration of psychotropic medication. We find no argument in respondent's brief that the portion of the order involuntarily committing him for inpatient mental health services was rendered in error. Specifically, respondent alleges the order allowing administration of the medication must be reversed as: (1) he was not afforded a hearing separate from his involuntary commitment proceeding as mandated by section 2-107.1(a-5)(2) of the Code (405 ILCS 5/2-107.1(a-5)(2) (West 2012)); (2) the order did not properly specify what specific medications and doses of those medications were allowed as mandated by section 2-107.1(a-5)(6) of the Code (405 ILCS 5/2-107.1(a-5)(6) (West 2012)), and neither the record nor the order contains the necessary findings of fact as dictated by section 3-816(a) of the Code (405 ILCS 5/3-816(a) (West 2012)); and (3) he was not give proper written information regarding the side effects of the psychotropic medication as mandated by section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2012)).

¶ 28 A. The "Capable of Repetition Yet Avoiding Review" Exception

¶ 29 The "capable of repetition yet avoiding review" exception has two elements. First, the challenged action must be of a duration too short to be fully litigated prior to its cessation. *Alfred H.H.*, 233 Ill. 2d at 357. Second, there must be a reasonable expectation that the same complaining party would be subjected to the same action again. *Id*.

¶ 30 In the present case, there is no question that the first criterion has been met. As noted above, the order from which respondent appeals was limited to 90 days. Both parties agree that the first criterion has been met. The only question with regard to this exception is whether there is a reasonable expectation that respondent will personally be subject to the same action again.

¶ 31 Respondent argues that given his "history of being in and out of emergency rooms," he "could again face involuntary admission and medication proceedings." However, it is not just the fact that he may, again, become the subject of involuntary commitment proceedings that leads respondent to ask us to review this matter under the mootness doctrine. Respondent argues that he may, again, be subject to the incorrect application of the statutory guidelines, which must be followed prior to a trial court entering an order allowing for the administration of psychotropic medication.

¶ 32 One of these guidelines respondent claims was not followed mandates separate hearings to determine the issue of involuntary commitment and whether psychotropic medication may be administered. 405 ILCS 5/2-107.1(a-5)(2) (West 2012) ("The hearing shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission but

- 5 -

may be heard immediately preceding or following such a judicial proceeding and may be heard by the same trier of fact or law as in that judicial proceeding.").

¶ 33    Respondent specifically argues that "the trial court could again fail to authorize specific medications and dosage ranges, make sufficient findings of fact, and/or hold only one hearing." The State does not dispute that the trial court held only one hearing below, in violation of section 2-107.1(a-5)(2) of the Code. This, respondent claims, satisfies the second prong of the "capable of repetition yet avoiding review" exception.

¶ 34    The State simply responds that there is no indication in the record that respondent would be subject to another involuntary commitment petition and, therefore, respondent failed to satisfy the test for this part of this exception as discussed by our supreme court in *Alfred H.H.* We disagree. Our supreme court's discussion of this exception in *Alfred H.H.* indicates to us that the facts presented herein do fall under the exception to the mootness doctrine.

¶ 35    In *Alfred H.H.*, our supreme court found that the respondent did not satisfy the second prong of the "capable of repetition yet avoiding review" exception. *Alfred H.H.*, 233 Ill. 2d at 360. This was so, however, because the entire basis of respondent's claim therein "is that the trial court lacked sufficient evidence to order his involuntary commitment. Respondent does not raise a constitutional argument or challenge the interpretation of the statute. Instead, he disputes whether the specific facts that were established during the hearing in this specific adjudication were sufficient to find respondent was a danger to himself or to others." *Id.*

¶ 36    While the respondent herein does not challenge the constitutionality of any section of the Code, he absolutely challenges the trial court's *de facto* interpretation of section 2-107.1(a-5)(2) under which the trial court felt comfortable holding a single hearing to determine whether to commit respondent and whether to allow medical providers to administer psychotropic medication.

¶ 37    The *Alfred H.H.* court differentiated the facts presented in that matter to the facts presented in *In re A Minor*, 127 Ill. 2d 247 (1989).

¶ 38    In *A Minor*, our supreme court found the "capable of repetition yet avoiding review" exception should be applied to review a moot matter. *Id.* at 258. The *A Minor* court considered whether the exception should be used to review an otherwise moot appeal of a newspaper that had been prohibited from publishing the name of a juvenile charged in a closed criminal proceeding. *Id.* at 259. In holding that the newspaper's appeal did fall within the exception, our supreme court reasoned that an appellant need not "demonstrate that the statute will in the future be applied in precisely the same circumstances or for precisely the same reasons. Such a requirement would mean that no case would ever be 'capable of repetition,' for the simple reason that the facts of a future case might be slightly different." *Id.* Instead, the court noted that it was "sufficient that the same statutory provision will most likely be applied in future cases involving the same party." *Id.*

¶ 39    In differentiating *Alfred H.H.* from *A Minor*, the *Alfred H.H.* court stated that, in *A Minor*, it "implicitly reasoned that resolution of the paper's constitutional challenge to the application of the statute would have some impact on future cases, as the paper was likely to seek the right to publish the name of a juvenile charged in a future case. Simply stated, there must be a substantial likelihood that the issue presented in the instant case, and any resolution thereof, would have some bearing on a similar issue presented in a subsequent case." *Alfred H.H.*, 233 Ill. 2d at 360.

¶ 40    The State argues that given the lack of evidence of a history of mental illness, respondent has failed to meet his burden of showing that there is a likelihood he will, again, be improperly subject to a single hearing in violation of the Code. Respondent disagrees, noting that the evidence indicates he has been in and out of emergency rooms recently, is an alcoholic, and is in poor health. Respondent suggests that there is a good likelihood he will return to an emergency room and could, again, be subject to application of section 2-107.1 of the Code. 405 ILCS 5/2-107.1(a-5)(2) (West 2012).

¶ 41    Our reading of *A Minor*, and *Alfred H.H.*'s analysis of *A Minor*, indicates to us that respondent has satisfied the requirements of both prongs of this exception to the mootness doctrine. Therefore, we will address the substance of his appeal.

¶ 42    Before doing so, however, we note that respondent raised none of the issues below that he asks us to address for the first time on appeal. Ordinarily, the failure to raise an issue in the trial court results in forfeiture of that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988). However, we decline to determine that these issues are forfeited. See *In re Katarzyna G.*, 2013 IL App (2d) 120807. "In its brief, the State did not claim that respondent forfeited review of the issue. As such, the State forfeited any forfeiture argument." *Id.* ¶ 10 (citing *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003)).

¶ 43    Respondent identifies four specific statute sections that outline procedures he claims were not properly followed: section 2-107.1(a-5)(2) (405 ILCS 5/2-107.1(a-5)(2) (West 2012)); section 2-107.1(a-5)(6) (405 ILCS 5/2-107.1(a-5)(6) (West 2012)); section 3-816(a) (405 ILCS 5/3-816(a) (West 2012)); and section 2-102(a-5) (405 ILCS 5/2-102(a-5) (West 2012)). "Whether substantial compliance with a statutory provision has taken place presents a question of law, which we review *de novo*." (Internal quotation marks omitted.) *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1072 (2011) (quoting *In re Laura H.*, 404 Ill. App. 3d 286, 290 (2010)).

¶ 44                              B. Section 2-107.1(a-5)(2)

¶ 45    The State concedes that the order allowing medical providers to administer psychotropic medication to respondent must be reversed as the trial court failed to hold separate hearings on the petition for involuntary commitment and petition to administer psychotropic medication as required by section 2-107.1(a-5)(2) of the Code (405 ILCS 5/2-107.1(a-5)(2) (West 2012)). We agree.

¶ 46    Section 2-107.1(a-5) states:

> "(a-5) Notwithstanding the provisions of Section 2-107 of this Code, psychotropic medication and electroconvulsive therapy may be administered to an adult recipient of services on an inpatient or outpatient basis without the informed consent of the recipient under the following standards:
>
>> (1) Any person 18 years of age or older, including any guardian, may petition the circuit court for an order authorizing the administration of psychotropic medication and electroconvulsive therapy to a recipient of services. ***
>>
>>                              * * *
>>
>> (2) The court shall hold a hearing within 7 days of the filing of the petition. *** The hearing shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission but may be heard immediately preceding or following such a judicial proceeding and may be heard by the same

trier of fact or law as in that judicial proceeding." 405 ILCS 5/2-107.1(a-5) (West 2012).

¶ 47     The record is clear that the trial court failed to comply with this section of the Code. The State filed the petition seeking involuntary commitment on October 16, 2013, and scheduled a hearing on that petition for October 21, 2013. As the hearing on the petition for involuntary commitment began on October 21, 2013, the assistant State's Attorney representing the State informed the court that "this morning I did file with the clerk a petition for administration of psychotropic medications." No separate hearing took place.

¶ 48     At the end of the October 21, 2013, hearing, the court entered an order that granted both petitions. The order remanded respondent to the care and custody of medical providers and the Department of Human Services and also directed those medical providers to administer psychotropic medications. We reverse the portion of that order allowing medical providers to administer psychotropic medications.

¶ 49                              C. Section 2-107.1(a-5)(6)

¶ 50     Respondent also argues that the order allowing medical providers to administer psychotropic medication to respondent must be reversed for the trial court's failure to specify the exact medications and their dosages the providers were to administer to him. Again, we agree.

¶ 51     Section 2-107.1(a-5)(6) states that an order issued under subsection (a-5) of the Code, as this order was, "shall designate the persons authorized to administer the treatment" and "shall also specify the medications and the anticipated range of dosages that have been authorized and may include a list of any alternative medications and range of dosages deemed necessary." 405 ILCS 5/2-107.1(a-5)(6) (West 2012).

¶ 52     Respondent characterizes the order issued by the trial court in this matter as providing "Dr. Sheth carte blanche authority to administer any medication at any dosage." The State makes no argument to the contrary. While we disagree with respondent's characterization of the order, we find it is not sufficiently specific to comply with section 2-107.1(a-5)(6) of the Code (405 ILCS 5/2-107.1(a-5)(6) (West 2012)).

¶ 53     We acknowledge that the October 21, 2013, order states that the "petition for psychotropic medication as outlined is granted and OSF & DHS may administer medication *as noted*." (Emphasis added.) However, there is no indication in the order or the judge's statements on the record for one to determine where the list of medications and dosages are "noted."

¶ 54     We assume that the trial court meant as noted in the document attached to the State's petition titled, "Psychotropic Medication." This document identifies both Haldol and a number of alternatives to Haldol, as well as corresponding dosage ranges for those medications. However, we find that section 2-107.1(a-5)(6) of the Code requires more specificity. 405 ILCS 5/2-107.1(a-5)(6) (West 2012). With the trial court's order in hand, the mere inclusion of the phrase "as noted" would leave a medical provider to wonder "as noted where?" Was the court referring to notations in the court file or medical file or both? This could have been remedied by incorporating the "psychotropic medications" sheet into the order.

¶ 55     Section 2-107.1(a-5)(6) clearly states that the court's order should "specify the medications and the anticipated range of dosages that have been authorized." 405 ILCS 5/2-107.1(a-5)(6) (West 2012). This order fails to do so and, as such, we find it does not comply with this section

of the Code.

¶ 56                          D. Section 2-102(a-5)

¶ 57       Respondent also argues that the State failed to comply with section 2-102(a-5) (405 ILCS 5/2-102(a-5) (West 2012)). This section mandates that when requested services include the administration of psychotropic medication, "the physician *** shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2-102(a-5) (West 2012).

¶ 58       Respondent argues that the State adduced "no evidence that it provided [respondent] with any written information about the side effects, risks, and benefits about the proposed treatment as well as alternatives to the proposed treatment." We agree in part and disagree in part with this statement.

¶ 59       A document attached to the State's petition signed by Dr. Sheth states, "I affirm that I advised the individual, in writing, of the risks and benefits of the proposed treatments." This document is uncontroverted evidence that Dr. Sheth relayed the risks and benefits of the proposed treatment to respondent in writing. Respondent's attorney possessed the document, which contains this statement during Dr. Sheth's testimony, yet never questioned him about it nor sought to force the State to produce the writing.

¶ 60       There is no indication in the record, however, that the State provided respondent, in writing, with alternatives to the proposed treatment. The *Katarzyna G.* court stated:

             "Section 2-102(a-5) of the Code not only ensures that a respondent is fully informed
             about the risks, benefits, side effects, and alternatives to treatment, but also ensures that
             the respondent's due process rights are protected. [Citation.] As a result, section
             2-102(a-5) of the Code must be strictly complied with, so as to secure the liberty
             interest that a respondent has in refusing invasive medication. [Citation.] Because of
             this, verbal notice does not constitute compliance with section 2-102(a-5) of the Code,
             and a respondent cannot waive his right to written notice. [Citation.]" *Katarzyna G.*,
             2013 IL App (2d) 120807, ¶ 16.

¶ 61       We find the State complied with the mandate of section 2-102(a-5) (405 ILCS 5/2-102(a-5) (West 2012)) to provide written notice of the benefits and risks of the proposed treatment. However, the State failed to comply with this section's mandate to provide, in writing, alternatives to the proposed treatment.


¶ 62                          E. Section 3-816(a)

¶ 63       Finally, respondent claims the trial court failed to detail in either the record or the written order from which he appeals the necessary findings of fact and law that are required by section 3-816(a) of the Code. Section 3-816(a) states:

             "(a) Every final order entered by the court under this Act shall be in writing and
             shall be accompanied by a statement on the record of the court's findings of fact and
             conclusions of law." 405 ILCS 5/3-816(a) (West 2012).

¶ 64       Respondent, however, acknowledges the trial court made some findings of fact that are contained in the record. Specifically, respondent acknowledges the trial court found "that you lack the capacity to give an informed consent for psychotropic medicine" and further found

that respondent suffered from "a serious mental illness." The trial court went on to state that there "has been a deterioration of your ability to function."

¶ 65 The trial court also stated it agreed with the State's assessment that respondent "doesn't get any medical treatment" on an outpatient basis, which renders him a "risk to himself." The court also agreed with the State's assessment that respondent then deteriorates to the point of thinking people are "out to get him," which leads to calling the police and emergency room visits. After agreeing with those assessments, the trial court informed respondent of its belief that "you just can't handle this by yourself."

¶ 66 Again, respondent claims these statements were insufficient findings of fact and law as required by section 3-816(a). Respondent claims the trial court's statements herein were analogous to those found lacking in *In re James S.*, 388 Ill. App. 3d 1102 (2009). We disagree.

¶ 67 In *James S.*, the only finding made by the trial court prior to entering the order allowing the administration of psychotropic medication was the court's statement that "it found by clear and convincing evidence that the respondent was a person subject to the involuntary administration of the psychotropic medication and *** so order[ed] according to the medications requested in the [p]etition." (Internal quotation marks omitted.) *Id.* at 1105. The *James S.* court held that this statement failed to comply with the mandate of section 3-816(a). *Id.* at 1107.

¶ 68 Respondent also cites *In re Rita P.*, 2013 IL App (1st) 112837, to support his contention that the trial court's findings failed to meet the requirements of section 3-816(a). The appellate court in *Rita P.* found the trial court's statements lacked sufficient detail to comply with the statute. *Id.* ¶¶ 20-21. However, after the respondent herein filed his brief on April 8, 2014, our supreme court reversed the appellate court's opinion in *Rita P. In re Rita P.*, 2014 IL 115798.

¶ 69 In reversing the appellate court, our supreme court was careful to note that they made no comment as to whether the trial court therein complied with the statute. *Id.* ¶ 42. Instead, the *Rita P.* court held the statute's finding requirement was not mandatory, as the appellate court stated, but instead directory: that is, " 'no particular consequence flows from noncompliance.' " *Id.* ¶ 43 (quoting *In re M.I.*, 2013 IL 113776, ¶ 16). " 'In other words, the mandatory/directory question simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Id.* (quoting *In re M.I.*, 2013 IL 113776, ¶ 16).

¶ 70 The *Rita P.* court characterized respondent's challenge by noting:
> "Indeed, respondent does not argue that the procedures followed in this case–a hearing, after notice, at which respondent was represented by counsel, and had an opportunity to challenge the State's evidence–were compromised because the court expressed only its legal conclusion that the evidence overwhelmingly supported the petition. We cannot make the leap, urged by respondent, that a directory reading will injure the liberty interests the foregoing procedures protect by somehow enabling trial courts to rubber-stamp a psychiatrist's recommendation or authorize administration of psychotropic drugs for improper reasons." *Id.* ¶ 60.

¶ 71 Turning to the case herein, we note that the findings in the record are considerably more specific than those at issue in *James S.* We find them sufficient. The respondent herein claims the trial court's findings are too conclusory, yet fails to identify why. He provides no discussion as to what additional findings would be necessary to comply with the statute.

¶ 72                                        CONCLUSION

¶ 73        As noted above, the order appealed from contains two directives: one committing the respondent involuntarily for psychiatric treatment and another allowing medical providers to administer psychotropic medications. We reverse only that portion of the order pertaining to the administration of psychotropic drugs.

¶ 74        The judgment of the circuit court of La Salle County is affirmed in part and reversed in part.

¶ 75        Affirmed in part and reversed in part.