2016 IL App (3d) 140980

Opinion filed April 15, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| *In re* SHARON H., a Person Found Subject to Involuntary Admission and Involuntary Administration of Psychotropic Medication, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-14-0980 Circuit No. 14-MH-18 |
| v. | ) ) | |
| Sharon H., | ) ) | The Honorable |
| Respondent-Appellant). | ) ) | Cynthia M. Raccuglia, Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Lytton and Wright concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The respondent, Sharon H., was the subject of petitions for involuntary admission and for

involuntary administration of medication. After a hearing, the circuit court granted both

petitions. On appeal, the respondent argues that the court erred when it granted the admission

and medication petitions. We affirm in part and reverse in part, and we also dismiss the appeal

in part.

¶ 2                                                      FACTS

¶ 3          On December 11, 2014, crisis worker Andrea Stinson filed a petition for involuntary admission of the respondent that alleged she was in immediate danger of harming herself. The admission petition alleged that the respondent was "unable to report accurate information, continues to lie and manipulate. Family got an order of detention. Hundreds of page [*sic*] of documentation showing client is having suicidal thoughts with a plan and disturbed/distorted thoughts. [The respondent] is a danger to herself, possibly other and in need of inpatient treatment."

¶ 4          Attached to the admission petition were two inpatient certificates. The first certificate was signed by Dr. Tony Hsa of Galesburg Cottage Hospital and dated December 9, 2014. Dr. Hsa opined that the respondent was in need of involuntary inpatient admission and described the respondent as follows: "[p]atient with hurried speed and possible mania. Patient sent in by court order and family brings in large amount of Facebook posts and emails reportedly from patient with paranoid and delusional thought process, thoughts about killing self with gun." The second certificate was signed by a psychiatrist, Dr. Sameen Ahmad, of OSF St. Elizabeth Hospital and dated December 10, 2014. Dr. Ahmad also opined that the respondent was in need of involuntary inpatient admission, and she described the respondent as follows: "33yo w female who was admitted from Galesburg Cottage Hospital where family had taken her for a court ordered evaluation. She has made bizarre statements on Facebook including intention to get a gun and kill herself. Needs stabilization on inpatient unit." The record indicates that on December 12, 2014, the respondent was served with a copy of the admission petition and was informed that a hearing on that petition would be held on December 16, 2014.

¶ 5    On December 16, 2014, the circuit court held a hearing on the admission petition. Three witnesses testified; the first of whom was the respondent's mother, Delores H. Delores testified that the respondent was 33 years old and had been living in an apartment in Galesburg since the summer. Delores had been to the apartment twice and she described it as messy and that it looked like a "flop house." Delores described an occurrence when the respondent was unable to understand that two relatives were dead. Delores also stated that her half-sister had called her to say that the respondent "wanted to take a handful of pills." Delores also alleged that just over one week ago, relatives had told her that the respondent had threatened to get a gun and shoot her father. Delores did not know if the respondent was employed, but she did state that the respondent "always seemed to have money." She did not know what the respondent did on a daily basis, and she claimed that the information she had about the respondent's behavior came from Facebook posts.

¶ 6    The second witness to testify was mental health counselor Breann Bridges. Bridges assisted with checking the respondent into the hospital. When Bridges asked the respondent if she was checking in voluntarily, the respondent said no, and Bridges read a list of rights to her. The respondent appeared to understand what was read to her.

¶ 7    The third witness to testify was Dr. Ahmad, who had been treating the respondent at OSF St. Elizabeth hospital. Dr. Ahmad had reviewed statements made on Facebook that led her to be concerned about the respondent's safety. Dr. Ahmad read a portion of a Facebook post from the respondent's Facebook account that she found particularly troubling:

> "My life has always been shit especially around here, but
> Maria told me she was working with me and since I knew about
> what has happened about my family that I needed to die so I could

3

finally have a better life. For the past several months even before I

returned to Galesburg I thought I was working with her for that

purpose. I thought the living in two homeless shelters, living in

my car and being put in jail was all for a story that would lead up

to my death. I was supposed to shoot myself with my dad's gun,

and that is why she wanted me to steal it (as I mentioned before)."

Counsel for the respondent objected to the admission of the Facebook post, but the court overruled the objection on the basis that the document was offered as a document reviewed by Dr. Ahmad in reaching her opinion, rather than being offered for the truth of the matter asserted.

¶ 8     When asked about the identity of Maria, Dr. Ahmad testified that she did not know, nor did the respondent when Dr. Ahmad questioned her. However, Dr. Ahmad testified that in her inquiries into the matter, she determined that Maria did not exist and was a part of the respondent's psychosis.

¶ 9     Dr. Ahmad stated that the respondent was pleasant during the examination, that she was smart, that her thought processes did not appear disorganized, and that she denied being suicidal or homicidal. Also, Dr. Ahmad testified that the respondent denied making any of the Facebook posts, claiming that she had shut down her Facebook account several months earlier.

¶ 10     Dr. Ahmad opined that the respondent suffered from bipolar disorder, based in part on the fact that the respondent had been diagnosed with it in the past. Also admitted into evidence were some letters that the respondent had written to Dr. Ahmad; one letter was dated December 14, 2014, and indicated that the respondent felt she was being controlled by somebody or something. Dr. Ahmad read from that letter, which included the respondent talking about devices that had

4

been implanted in people that, among other things, allowed others to know what one was thinking.

¶ 11       Another letter that the respondent wrote to Dr. Ahmad was introduced into evidence.  In the letter, the respondent stated, *inter alia*, that she had met "Maria Lopez" a few years prior while in grad school, and that Maria had been "assigned" the respondent's case.  The respondent claimed that Maria had been giving her placebo pills, rather than lithium, and had been "substituting harmful substances that simulate other disorders."  She also said that Maria had "abused me in many other ways over the past couple months & caused an acute stress reaction/Disorder."  The respondent alleged that her "stress hormones" indicated that she had "undergone prolonged torture not just stress."  She also stated that she had been diagnosed with bipolar II disorder 13 years ago and had been on lithium since then.

¶ 12       Dr. Ahmad also recommended that the respondent be transferred to a state hospital because OSF St. Elizabeth Hospital was only meant for acute care.  Dr. Ahmad opined that the respondent was in need of long-term care because she was "smart enough to superficially be organized, and she denies a lot of her symptoms so monitoring is really tough.  We can give her medications and she'll deny all her symptoms, but we won't know if it's true unless we keep her for a long period of time so that the psychosis can unmask itself."  Dr. Ahmad also considered less restrictive alternatives, but ruled them out because the respondent had minimal insight in that she did not know that she was delusional.  Dr. Ahmad was also concerned for the respondent's safety and for the safety of others based on threats that her family has alleged the respondent made in the past.  Dr. Ahmad mentioned that the respondent admitted that she had been diagnosed in the past with bipolar disorder, that she had been on lithium for it, that she had been mostly hypomanic, and that she had attempted to commit suicide at age 13.

¶ 13        At the close of the hearing, the court found that the respondent was in need of inpatient hospitalization for her mental illness.  In so ruling, the court stated that it was not giving the Facebook posts any weight, but that the opinion of Dr. Ahmad, the letters written to Dr. Ahmad, and the fact that the respondent had been taking lithium were sufficient to establish that the respondent was in need of involuntary admission.  The admission order entered by the court was for a period of 90 days.

¶ 14        After the court ruled on admission, the court requested evidence on the treatment plan. The record indicates that a petition for administration of psychotropic medication had been filed with the court on December 16, 2014—the date of the hearing on the admission petition.  The medication petition was signed on that day by Dr. Ahmad and contained her recommendation to treat the respondent with potentially four different psychotropic medications.  Further, the petition requested the following testing: "Lab Testing & Imaging & procedures required for management and for transfer to the State hospital."  The record also indicates that the respondent did not object to the medication petition on procedural grounds.[1]

¶ 15        Dr. Ahmad was recalled and she testified about her recommendation to treat the respondent with four psychotropic medications.  She also testified on the benefits and risks associated with those medications, and she stated that her hope was that the medications would help the respondent with her delusions such that therapy could be of further assistance.  No testimony was elicited regarding any testing to which the respondent would be subjected, with the possible exception of what Dr. Ahmad mentioned regarding the side effects of one of the drugs—monitoring liver function, movement, and blood counts.  At the close of Dr. Ahmad's

---

[1] Despite this failure to object, we will not apply the forfeiture doctrine to her claim on appeal that the State failed to timely serve the medication petition on her.  See *In re B.K.*, 362 Ill. App. 3d 324, 329-330 (2005).

6

testimony, the court granted the petition for involuntary administration of psychotropic medication, which was to be in effect for 90 days. The medication order also mandated "that [the Department of Human Services] be allowed to perform any lab testing or imaging required for management."

¶ 16     The respondent appealed.

¶ 17                                ANALYSIS

¶ 18     On appeal, the respondent argues that the circuit court erred when it granted the petitions for involuntary admission and for the involuntary administration of psychotropic medication. Specifically, the respondent argues that: (1) the evidence was insufficient to establish that she was subject to involuntary admission; (2) the evidence was insufficient to establish that she was subject to involuntary medication; (3) the State and the circuit court failed to comply with the statutory provisions on involuntary medication; and (4) her trial counsel was ineffective.

¶ 19     Initially, we note that this appeal is moot. The circuit court's admission and medication orders have long expired. The respondent acknowledges that this appeal is moot, but she asserts that two exceptions to the mootness doctrine apply—the "capable of repetition, but evading review" exception and the "public interest exception"—such that this court should reach the merits of her arguments.

¶ 20     Generally, courts will not address moot claims. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). While there is no general exception to the mootness doctrine in mental health cases, the traditional exceptions can apply and their application must be determined on a case-by-case basis. *In re E.F.*, 2014 IL App (3d) 130814, ¶ 25. Further, this determination "must consider all the applicable exceptions in light of the relevant facts and legal claims raised in the appeal." *Alfred H.H.*, 233 Ill. 2d at 364; see also *In re Rita P.*, 2014 IL 115798, ¶ 32. All of the

7

exceptions to the mootness doctrine are "to be construed narrowly and require a clear showing of each criterion to bring the case within the terms." *In re J.T.*, 221 Ill. 2d 338, 350 (2006).

¶ 21　　　　　　I. "CAPABLE OF REPETITION, BUT EVADING REVIEW" EXCEPTION

¶ 22　　　　First, the respondent claims that the "capable of repetition, but evading review" exception applies to her arguments on appeal. Specifically, she claims that because this appeal raises statutory interpretation issues, "in future involuntary medication hearings, the issue of what evidence the State must present and compliance with the [Mental Health] Code's requirements is not specific to [the respondent's] case and can be applied to future proceedings."

¶ 23　　　　To qualify for the "capable of repetition, but evading review" exception, two elements must be met: (1) "the challenged action must be of a duration too short to be fully litigated prior to its cessation"; and (2) "there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " Id. at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). In this case, there is no question that the first element has been met, as the admission and medication orders each lasted for only 90 days. Thus, the only question is whether the respondent's arguments have also met the second element.

¶ 24　　　　Our supreme court has clarified the second element to require that "the actions must have a substantial enough relation that the resolution of the issue in the present case would be likely to affect a future case involving respondent." *Alfred H.H.*, 233 Ill. 2d at 359. Further, the *Alfred H.H.* court held in that case that sufficiency of the evidence claims, by themselves, are insufficient to meet the second element of this exception:

> "[Respondent's] claim on appeal is that the trial court lacked
>
> sufficient evidence to order his involuntary commitment.
>
> Respondent does not raise a constitutional argument or challenge

8

the interpretation of the statute. Instead, he disputes whether the specific facts that were established during the hearing in this specific adjudication were sufficient to find respondent was a danger to himself or to others. There is no clear indication of how a resolution of this issue could be of use to respondent in future litigation. The court acknowledges that though it is possible that the resolution of such questions could be helpful to future litigants, we do not, as we stated earlier, 'review cases merely to set precedent or guide future litigation.' " *Id*. at 360 (quoting *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997)).

Here, the respondent's first two arguments present nothing more than sufficiency of the evidence claims. Those arguments do not meet the second element of this exception. *Id*.

¶ 25　　　We decline to address whether the respondent's third and fourth arguments meet the "capable of repetition, but evading review" exception because, for the following reasons, we find that those arguments qualify for the public interest exception.

¶ 26　　　　　　　　　　　　II.  PUBLIC INTEREST EXCEPTION

¶ 27　　　Second, the respondent claims that the public interest exception applies to her arguments on appeal. "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Id.* at 355. In support of her argument, the respondent states:

　　　　　"[t]his is an initial appeal on the issue of whether a court has the power to hold both a commitment and medication hearing

9

in the sane [*sic*] proceeding, to enter medication orders without specificity, and to order commitment and medication orders based on hearsay and inadequate evidence. It also raises other statutory and due process issues such as whether a court can enter an order for involuntary medication when petitioner fails to comply with the statutory mandate of providing full written information to the recipient."

The respondent also provides very brief statements on each of the three elements of the public interest exception. With regard to the first element, the respondent states only that "[t]he constitutional and statutory issues presented in this appeal are of a public nature -- especially given the curtailment of liberty at risk with an involuntary medication order." With regard to the second element, the respondent claims that there is a dearth of case law from this district regarding procedural and substantive aspects of medication petitions and hearings. With regard to the third element, the respondent states that because the appeal pertains to matters of statutory interpretation, the issues are likely to recur in the future.

¶ 28    Our supreme court has explained that "case-specific inquiries, such as sufficiency of the evidence, do not present the kinds of broad public issues required for review under the public interest exception." *Rita P.*, 2014 IL 115798, ¶ 36. The respondent's first two arguments are strictly sufficiency-of-the-evidence challenges and therefore do not meet the first element of the public interest exception. *Id.*

¶ 29    We now turn to the respondent's third argument—that the State and the circuit court failed to comply with the statutory provisions on involuntary medication. The respondent's supporting claims are three-fold. First, she argues that the State violated section 2-107.1(a-5)(1)

10

of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5)(1) (West 2012)) because it did not serve the medication petition on her at least three days prior to the hearing. Second, she argues that the court violated section 2-107.1(a-5)(2) of the Code (405 ILCS 5/2-107.1(a-5)(2) (West 2012)) by holding simultaneous hearings on both the admission and medication petitions. Third, the respondent argues that the court violated section 2-107.1(a-5)(4)(G) of the Code (405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012)) by failing to specify in the medication order what testing it was requiring to be conducted on the respondent.

¶ 30　　　　As previously stated, the first element of the public interest exception is that the issue presented is of a public nature. *Alfred H.H.*, 233 Ill. 2d at 355. Our supreme court has stated that "the procedures which must be followed and the proofs that must be made before a court may authorize involuntary treatment to recipients of mental health services are matters of a public nature and of substantial public concern." *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002). Numerous cases have employed this principle. See, *e.g.*, *In re Robert S.*, 213 Ill. 2d 30, 46 (2004); *In re James S.*, 388 Ill. App. 3d 1102, 1105 (2009); *In re Lance H.*, 402 Ill. App. 3d 382, 385 (2010); *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1071 (2011). Based on this precedent, we find that the respondent's third argument presents a question of public nature such that it meets the first element of the public interest exception.

¶ 31　　　　We find that the respondent's third argument also meets the second element of the public interest exception, which is that a need exists for an authoritative determination of the moot question (*Alfred H.H.*, 233 Ill. 2d at 355), even though, as the respondent's supporting claims acknowledge, the law in this area is clear. Section 2-107.1(a-5)(1) of the Code requires that the petition for involuntary administration of medication be served on the respondent no later than three days before the hearing on the petition. 405 ILCS 5/2-107.1(a-5)(1) (West 2012). Section

11

2-107.1(a-5)(2) of the Code requires separate hearings on commitment and medication petitions. 405 ILCS 5/2-107.1(a-5)(2) (West 2012). Section 2-107.1(a-5)(4)(G) of the Code requires that if a petition seeks authorization for testing and other procedures, the State must prove by clear and convincing evidence "that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012). Despite these clear statutory requirements and ample case law that demonstrates their clarity (see, *e.g.*, *In re David M.*, 2013 IL App (4th) 121004, ¶ 36 (holding that section 2-107.1(a-5)(1) was violated when the State filed a petition for involuntary administration of medication on the same day as the commitment hearing); *In re B.K.*, 362 Ill. App. 3d 324, 328-329 (2005) (same); *In re Eric H.*, 399 Ill. App. 3d 831, 833-35 (2010) (discussing the "plain language" of the notice requirement in section 2-107.1 and holding that the failure to comply with the notice requirements invalidates a petition to involuntarily administer psychotropic medication; *In re Carmody*, 274 Ill. App. 3d 46, 53-54 (1995) (same)); *E.F.*, 2014 IL App (3d) 130814, ¶¶ 45-48 (reversing a medication order because the circuit court failed to hold separate hearings on the commitment and medication petitions as required by section 2-107.1(a-5)(2) of the Code); *In re Donald L.*, 2014 IL App (2d) 130044, ¶ 27 (holding that the circuit court erred when it ordered " 'other tests necessary to evaluate safe administration of medications' " when no evidence of those tests was presented at the medication hearing)), procedural errors involving these provisions continue to arise. We find that further clarification of these provisions will provide guidance for the courts and future litigants in following the mandates of the Code. See *In re Lance H.*, 2014 IL 114899, ¶ 14; *In re Laura H.*, 404 Ill. App. 3d 286, 289 (2010) (holding that despite case law addressing compliance with the Code, "this issue's recurrence indicates both (1) a need still exists for guidance in this

area and (2) the likeliness of future recurrence in other mental-health cases").  Accordingly, the respondent's third argument meets the second element of the public interest exception.

¶ 32    We also find that the respondent's third argument meets the third element of the public interest exception, which requires that the question is likely to recur in the future.  While there was no evidence of the respondent being subject to involuntary admission or involuntary medication orders in the past, the respondent has suffered from bipolar disorder and has been on medication for a long period of time.  Resolution of her statutory-based claims would aid her if she in fact is subject to future petitions for involuntary admission and/or medication, as well as other individuals situated similarly to the respondent.  *Id.*  Under these circumstances, we hold that the respondent's third argument qualifies for the public interest exception to the mootness doctrine.

¶ 33    Our review of the respondent's fourth argument—that her trial counsel rendered ineffective assistance—reveals that it also meets the elements of the public interest exception.  In this regard, we find *In re Jessica H.*, 2014 IL App (4th) 130399, to be instructive.  In that case, the respondent argued that her trial counsel was ineffective for failing to object to procedural errors related to a petition for involuntary admission.  *Id.* ¶ 22.  Despite the appeal being moot, the court ruled that the public interest exception applied:

> "Here, as entry of the recommitment order violated
> mandatory statutory language and implicates one's constitutional
> rights, the issue is one of a public nature.  Also, the court, the
> State, and counsel for the respondent failed to appreciate the
> mandatory statutory requirements given the posture of this case.  In
> addition, a determination as to the statutorily required outcome

13

when presented with facts such as those in this matter is needed. Such a determination would provide for the future guidance of public officers. Finally, in light of the large number of individuals impacted by subsequent involuntary-commitment proceedings, there is a likelihood of future recurrence of the question presented." *Id.* ¶ 20.

¶ 34 In her ineffective assistance of counsel argument, the respondent specifically asserts that counsel: (1) failed to follow through with a jury demand; (2) failed to object to both petitions being heard on the same day; (3) failed to object to the testimony of Delores, who lacked personal knowledge of the respondent's actions and alleged threats; (4) failed to ensure that the respondent received written information on medications and alternative treatments; and (5) failed to object to the substance of the court's medication order. Because these claims invoke the same type of concerns present in *Jessica H.*, we find that the respondent's fourth argument qualifies for the public interest exception. See *id.*

¶ 35 III. MERITS OF THE RESPONDENT'S THIRD AND FOURTH ARGUMENTS

¶ 36 On the merits of the respondent's third argument, we note that when we are faced with a question of substantial compliance with statutory provisions, our review is *de novo*. *E.F.*, 2014 IL App (3d) 130814, ¶ 43.

¶ 37 The respondent's first supporting claim is that the State violated section 2-107.1(a-5)(1) of the Code because it did not serve the medication petition on her at least three days prior to the hearing. The State concedes error, and we agree with the respondent's claim. The record reflects that the medication petition was filed with the circuit court on the same day as the admission

14

hearing. Accordingly, it was error to conduct a medication hearing on that day. 405 ILCS 5/2-107.1(a-5)(1) (West 2012).

¶ 38    The respondent's second supporting claim is that the circuit court violated section 2-107.1(a-5)(2) of the Code by holding simultaneous hearings on both the admission and medication petitions. We disagree. The record reflects that the court held the admission portion of the hearing first and then held the medication portion, in which the State presented evidence on the relevant statutory requirements (405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012)). Accordingly, the court did not violate section 2-107.1(a-5)(2). 405 ILCS 5/2-107.1(a-5)(2) (West 2012) (allowing the medication hearing to be conducted "immediately preceding or following [an admission hearing] and may be heard by the same trier of fact or law as in that judicial proceeding").

¶ 39    The respondent's third supporting claim is that the circuit court violated section 2-107.1(a-5)(4)(G) of the Code by failing to specify in the medication order what testing it was requiring to be conducted on the respondent. The State concedes error, and we agree with the respondent's claim. As we noted above, section 2-107.1(a-5)(4)(G) of the Code requires that if a petition seeks authorization for testing and other procedures, the State must prove by clear and convincing evidence "that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012). The medication petition in this case requested "Lab Testing & Imaging & procedures required for management and for transfer to the State hospital." At the hearing, the only possible testimony that was elicited regarding testing was Dr. Ahmad stating that due to the potential side effects of one of the drugs, the respondent's liver function, movement, and blood counts would need to be monitored. In its order, the court ordered "that [the Department of Human Services] be allowed

15

to perform any lab testing or imaging required for management." The lack of evidence presented at the medication hearing and the non-specific nature of the court's order regarding testing violated section 2-107.1(a-5)(4)(G). *Donald L.*, 2014 IL App (2d) 130044, ¶ 26 (holding that "[w]ithout specific evidence, a court is unable to determine which tests are essential to the safe and effective administration of treatment as required by the Code. The court may not delegate that determination to the respondent's doctors by allowing them to administer unspecified tests as they see fit.").

¶ 40    In sum, the circuit court committed two errors with regard to the medication petition and hearing. The failure to provide proper notice pursuant to section 2-107.1(a-5)(1) means that the court's medication order must be reversed (*Carmody*, 274 Ill. App. 3d at 54), as does the court's error regarding the ordering of testing (*Donald L.*, 2014 IL App (2d) 130044, ¶ 27). Accordingly, we reverse the circuit court's medication order.

¶ 41    With regard to the respondent's fourth argument—that her trial counsel rendered ineffective assistance—she claims that that counsel: (1) failed to follow through with a jury demand; (2) failed to object to both petitions being heard on the same day; (3) failed to object to the testimony of Delores, who lacked personal knowledge of the respondent's actions and alleged threats; (4) failed to ensure that the respondent received written information on medications and alternative treatments; and (5) failed to object to the substance of the court's medication order. Initially, we reject the respondent's first supporting claim outright, as she does not provide supporting argument with citation to authority and does not explain how the failure to follow through with a jury demand prejudiced her. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Sexton v. City of Chicago*, 2012 IL App (1st) 100010, ¶ 79 (holding that the failure to

develop an argument in an appellate brief violates Rule 341(h)(7)). We now turn to the respondent's remaining claims.

¶ 42    Individuals who are subject to involuntary admission hearings are entitled to the effective assistance of counsel. *Jessica H.*, 2014 IL App (4th) 130399, ¶ 23. To establish that counsel was ineffective, "the respondent must establish that (1) counsel's performance was deficient, such that the errors were so serious that counsel was not functioning as the 'counsel' contemplated by the Code; and (2) counsel's errors were so prejudicial as to deprive her of a fair proceeding." *Carmody*, 274 Ill. App. 3d at 57. Of paramount importance in involuntary admissions proceedings is "whether the respondent's counsel acted so as to hold the State to its burden of proof and its procedural requirements." *Id.* at 56.

¶ 43    With regard to the admission hearing, the respondent claims only that trial counsel was ineffective for failing to object to Delores' testimony. However, even assuming trial counsel's performance was deficient in this regard, we disagree that it prejudiced the respondent. "[A] person is subject to involuntary admission if he or she has a mental illness and because of that illness is either 'reasonably expected to inflict serious physical harm on himself or herself or another in the near future' or is 'unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm.' " 405 ILCS 5/1-119(1), (2) (West 2012). Even without Delores' testimony, Dr. Ahmad opined that the respondent suffered from bipolar disorder, was delusional, and was a threat to herself and potentially others. Dr. Ahmad's opinion was supported by: (1) the respondent's past diagnosis of bipolar disorder; (2) Dr. Ahmad's examination of the respondent; (3) Dr. Ahmad's concern over the Facebook post referencing "Maria" telling the respondent to steal a gun and shoot herself; and (4) the letters the respondent wrote to Dr. Ahmad while in the hospital, which indicated the respondent was delusional. The

17

evidence was sufficient to support a finding that the respondent was subject to involuntary admission, even without Delores' testimony. Accordingly, trial counsel did not render ineffective assistance at the admission hearing as alleged by the respondent. See *Jessica H.*, 2014 IL App (4th) 130399, ¶¶ 29-35 (discussing the prejudice prong and holding that a prejudicial error is one that has a dispositive effect on the outcome of the proceeding).

¶ 44 The respondent's remaining three supporting claims of ineffective assistance of counsel relate to the medication hearing. Because we have already held that the circuit court's medication order must be reversed (*supra* ¶ 38), we need not address these claims.

¶ 45                                              CONCLUSION

¶ 46 For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed in part and reversed in part, and the appeal is dismissed in part. Specifically, our rulings are as follows. First, two of the respondent's four claims on review are moot and are not excused by any applicable exception to the mootness doctrine; accordingly, they are not subject to review and are dismissed as moot. Second, the respondent's remaining two claims satisfy the public interest exception to the mootness doctrine and are subject to review. Third, the court's decision ordering psychotropic medication to be involuntarily administered to the respondent is reversed. Fourth, the respondent has failed to show the prejudice necessary to establish that her trial counsel was ineffective at the admission hearing; accordingly, we must affirm the court's admission order.

¶ 47 Affirmed in part and reversed in part; appeal dismissed in part.